11 JOAN BERNARD ARMSTRONG, Judge.
This is a wrongful death and survival action arising from a vehicle-pedestrian collision. Both the plaintiffs and the defendants appeal as to the allocation of fault and as to the amounts of general damages awarded. Because we find that the trial court was not clearly wrong-manifestly erroneous as to the allocation of fault, and did not abuse its discretion as to the amounts of general damages, we will affirm.
The pedestrian involved was Emmett Hickerson. The driver involved was George Zimmerman. At the time of the collision, Mr. Zimmerman was driving a vehicle owned by the Orleans Parish School Board and he was in the course and scope of his employment with the School Board.
The collision occurred on Chef Menteur Highway near Flake Street. Mr. Hicker-son was crossing Chef Menteur when he was struck by the vehicle driven by Mr. Zimmerman. The collision occurred about ten feet from the intersection of Flake Street so Mr. Hickerson was crossing near, but not quite at, the corner. Mr. Hickerson was proceeding from the neutral ground in the center of Chef Menteur l?and was most of the way across Chef Menteur when the collision occurred. It was about 7:00 p.m. and the area of the collision was lit by streetlights. The lighting was good although not as light as daytime. Nothing obstructed the view of the neutral ground from where Mr. Hick-erson left to cross Chef Menteur. The speed limit was 40 miles per hour and Mr. Zimmerman was driving, at most, 48 miles per hour and, possibly, less than 40 miles per hour. An autopsy showed that Mr. Hickerson’s blood had sufficient alcohol in it to impair his judgment and reactions to some degree. Mr. Zimmerman was not intoxicated. Despite the adequate lighting and the lack of any obstruction to his vision, Mr. Zimmerman testified that he did not see Mr. Hickerson either prior to the collision or as the collision occurred. In fact, he testified that, when the collision occurred, he thought that someone had thrown a brick at his windshield.
Mr. Hickerson’s widow, Valorie Hicker-son, and his adult daughter by a previous marriage, Adoración Hickerson, brought the present action against Mr. Zimmerman, the School Board and their insurer. A bench trial was held. The trial court found Mr. Hickerson and Mr. Zimmerman each 50% at fault. The trial court awarded these damages of $400,000 general *58 damages, $144,182 lost wages and $5,768.65 funeral expenses to the estate of Mr. Hickerson. The trial court awarded $200,000 general damages to Valorie Hick-erson and $100,000 general damages to Adoración Hickerson. The damages were reduced by 50% due to the 50% comparative fault assigned to Mr. Hickerson.
1 sThe defendants appeal and argue that the trial court should have assessed 100% of the fault to Mr. Hickerson and no fault at all to Mr. Zimmerman. The defendants also argue that the $400,000 general damages award to Mr. Hickerson’s estate should be reversed or, alternatively, reduced. The plaintiffs appeal and argue that the trial court should have assessed 100% of the fault to Mr. Zimmerman and no fault at all to Mr. Hickerson. The plaintiffs also argue that the general damage awards to Valorie Hickerson ($200,-000) and to Adoración Hickerson ($100,-000) should be increased. With respect to the allocation of fault, the Supreme Court restated the standard of appellate review thus:
This Court has previously addressed the allocation of fault and the standard of review to be applied by appellate courts reviewing such determinations. Finding the same considerations applicable to the fault allocation process as are applied in quantum assessments, we concluded “the trier of fact is owed some deference in allocating fault” since the finding of percentages of fault is also a factual determination. Clement v. Frey, 95-1119 (La.1/16/96); 666 So.2d 607, 609, 610. As with other factual determinations, the trier of fact is vested with much discretion in its allocation of fault. Id. Therefore, an appellate court should only disturb the trier of fact’s allocation of fault when it is clearly wrong or manifestly erroneous. Only after making a determination that the trier of fact’s apportionment of fault is clearly wrong can an appellate court disturb the award, and then only to the extent of lowering it or raising it to the highest or lowest point respectively which is reasonably within the trial court’s discretion. Clement, 666 So.2d at 611; Coco v. Winston Industries, Inc., 341 So.2d 332, 335 (La.1977).
The appellate courts determination of whether the trial court was clearly wrong in its allocation of fault is guided by the factors set forth in Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967, 974 (La.1985). In Watson, we said “various factors may influence the degree of fault assigned,” including:
|4(1) Whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties.
Watson, 469 So.2d at 974. These same factors guide the appellate court’s determination as to the highest or lowest percentage of fault that could reasonably be assessed. Clement, 666 So.2d at 611
Duncan v. Kansas City Southern R.R. Co. 00-0066 (La.10/30/00), 773 So.2d 670, 680-681. Thus, we may not disturb the trial court’s allocation of fault unless it is clearly wrong-manifestly erroneous.
*59 The duties of care of pedestrians and motorists are set out in general terms in a series of three statutes:
A. When traffic-control signals are not in place or not in operation the driver of a vehicle shall yield the right of way, slowing down or stopping if need be to so yield, to a pedestrian crossing the roadway within a cross-walk when the pedestrian is upon the half of the roadway upon which the vehicle is traveling or when the pedestrian is approaching closely from the opposite half of the roadway as to be in danger.
B. No pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield.
La. R.S. 32:212 (in pertinent part).
A. Every pedestrian crossing a roadway at any point other than within a marked cross walk or within an lRunmarked cross walk at an intersection shall yield the right of way to all vehicles upon the roadway.
La. R.S. 32:213 (in pertinent part).
Notwithstanding the foregoing provisions of this Part, every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn when necessary and shall exercise proper precaution upon observing any child or any confused or incapacitated person upon a highway.
La. R.S. 32:214 (in pertinent part).
Thus, both pedestrians and motorist have statutory duties of care.
Because motor vehicles pose such a hazard to pedestrians, motorists owe a duty of special care to pedestrians. Blair v. Tynes, 621 So.2d 591, 596-97 (La.1993). However, this does not mean that the motorist is necessarily at fault whenever there is a motor vehicle-pedestrian collision. Mutart v. Allstate Ins. Co., 622 So.2d 803, 806 (La.App. 4th Cir.), writ denied, 629 So.2d 416 (La.1993). Thus, the conduct of both the motorist and the pedestrian must be considered when assessing fault in a motor vehicle-pedestrian collision case.
In the present case, Mr. Zimmerman had a special duty of care towards Mr. Hickerson as a pedestrian. His failure to observe Mr. Hickerson preparing to cross and crossing Chef Menteur is indicative of Mr. Zimmerman either failing to look or failing to see what should have been seen and, in either event, is indicative of negligence. Winfield v. Dih, 2001-1357 (La.App. 4 Cir 4/24/02), 816 So.2d 942, 951. On the other hand, Mr. Hickerson also had a clear field of view, and should have been able to observe oncoming vehicles, and evidently was somewhat | fiintoxicated when he crossed Chef Menteur. Given the circumstances, we cannot say that the trial court was clearly wrong-manifestly erroneous in finding both Mr. Zimmerman and Mr. Hickerson each 50% at fault.
As to the award of general damages to Mr. Hickerson’s estate, the defendants argue that the award was erroneous because neither pre-impact fear nor pre-death pain and suffering of Mr. Hickerson was proven. Survival damages, including both fear and pain and suffering of the deceased, may be awarded if there is a scintilla of evidence to support them Declouet v. Orleans Parish School Board, 96-2805 (La.App. 4 Cir. 06/03/98), 715 So.2d 69, 78; In re Medical Review Panel of Bilello, 621 So.2d 6, 9 (La.App. 4th Cir.), writ denied, 629 So.2d 1139 (La.1993). Also, Louisiana law “recognizes a presumption of continuing life where the time of death is uncertain, until evidence is presented sufficient to establish that death *60 occurred at some specific time or until a presumption of death established by law attaches”. Shroyer v. Grush, 555 So.2d 534, 547 (La.App. 4th Cir.1989) (automobile-pedestrian collision case), writ denied, 559 So.2d 139, 140 (La.1990). Based upon the autopsy report in the present case, the trial court could reasonably find that Mr. Hickerson survived for some time after the impact and suffered pain. This is particularly so in light of the presumption of continuing life. Expert testimony would have been helpful in this regard but was not presented. From the circumstances of the accident, the trial court could reasonably find that Mr. Hickerson suffered pre-impact fear. This cannot be known for certain, as Mr. Hickerson died, Mr. Zimmerman never saw Mr. Hickerson before the collision and |7no witness actually saw the collision. However, the trial court could reasonably find that, more likely than not, Mr. Hickerson saw that he was about to be hit by Mr. Zimmerman’s vehicle.
The defendants also argue that the $400,000 amount of general damages awarded to Mr. Hickerson’s estate was too high. It is well-established that the trial court as finder of fact has “vast” discretion as to the amount of general damages. E.g., Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993). While the $400,000 amount is high, we may not disturb it upon appeal absent an abuse of discretion, id., and the $400,000 amount is not so high as to constitute an abuse of the trial court’s “vast” discretion.
The plaintiffs argue that the general damages awards of $200,000 to Valorie Hickerson and $100,000 to Adoración Hick-erson are too low. Again, the trial court as finder of fact has “vast” discretion as to the amount of general damages. Youn, supra. The evidence shows that Valorie Hickerson, as spouse, and Adoración Hick-erson, as daughter, had close relationships with Mr. Hickerson. Large awards of general damages for wrongful death were justified. However, the trial court did make large awards. Reasonable minds could differ as to whether larger awards were justified or whether the amounts awarded were the most appropriate. Because the trial court’s awards were not unreasonable, they do not constitute an abuse of the trial court’s “vast” discretion and, therefore, those awards may not be disturbed upon appeal. Id.
|sLastly, the plaintiffs argue on appeal that the trial court erred by awarding $144,182 in lost wages of Mr. Hicker-son, rather than $180,228 in lost wages, and by not awarding $17,591 for lost household services of Mr. Hickerson. The plaintiffs argue that these amounts were set out in the report of Holly Sharp, CPA, and that the parties stipulated to the admissibility of Ms. Sharp’s report. However, a stipulation as to the admissibility of Ms. Sharp’s report is not a stipulation as to the correctness of her report. Further, as to the lost wages, Ms. Sharp’s report offered two alternative calculations, based upon differing income assumption, which calculations were $144,182 and $180,228. Thus, the trial court simply selected the lesser of the two of Ms. Sharp’s alternative calculation, presumably because the trial court found the income assumed for that calculation to be more appropriate, and the plaintiffs do not show why the trial court was unreasonable to do so. The trial court did not award the $17,591 for the value of lost household services calculated by Ms. Sharp. Again, presumably, this was based upon the trial court’s view of the appropriateness of Ms. Sharp’s assumptions underlying her calculation. The plaintiffs do not show why the trial court was unreasonable in this regard.
*61 In sum, the stipulation as to the admissibility of Ms. Sharp’s report was not binding upon the trial court as to the correctness of Ms. Sharp’s conclusions, and so the trial court’s findings as to the correctness of Ms. Sharp’s conclusions is a factual issue subject to review upon appeal under the manifest error-clear 19wrongness standard and it has not been shown that the trial court was clearly wrong-manifestly erroneous as to these issues.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.