EDWIN A. LOMBARD, Judge.
11 This is a premises liability and negligence action against Defendant/Appellee, Touro Infirmary, filed by Plaintiffs/Appellants, who are the relatives of decedent Michael Falcone.[1] The Appellants seek review of the district court’s August 6, 2012 judgment affirming a jury verdict which found Touro Infirmary Hospital not to be negligent in the death of Michael Falcone. Finding that the verdict of the jury is neither manifestly erroneous nor clearly wrong, we affirm.

FACTS AND PROCEDURAL HISTORY

Educator Michael Falcone (“Mr. Fal-cone”) was a fifty-six (56) year old single man on August 12, 2005, when he presented for a routine physical and an echo stress test at an Ochsner Hospital (“Ochs-ner”) clinic for the 2005-2006 school year. The stress test revealed a Stanford Type A aortic dissection and an aneurysm of the ascending aorta. Thereafter, Mr. Falcone underwent corrective surgery performed by cardiothoracic surgeon, Dr. P. Eugene Parrino (“Dr. Parrino”) on Ochsner’s main campus. Mr. Falcone remained at Ochs-ner in the care of Dr. Parrino after his surgery.
*644 12Mr. Falcone, who had been sedated with Propofol and other barbiturates, did not fully awake from his surgery in the days following the procedure. Moreover, it was discovered that he suffered an occipital stroke following surgery. He was intubated and due to pain, he was continuously sedated on Propofol and Morphine following the surgery. He was responsive to pain and was moving his extremities, but it was difficult for neurologic exams to be performed on him due to the sedatives he was taking. Dr. Parrino ordered that sedation and ventilation be stopped on August 22, 2005, and, that same day, Mr. Falcone awoke and began eye movement, pain withdrawal, and upper and lower body extremity movement. His condition gradually began to improve at Ochsner.
On August 25, 2005, Mr. Falcone was transferred to the Specialty Hospital of New Orleans (“SHONO”), which was an independently owned, long-term acute care hospital located inside of the main building of Touro Infirmary (“Touro”). SHONO and Touro were parties to a Lease Agreement, wherein SHONO leased the fourth floor and a portion of the seventh floor of Touro. Mr. Falcone was one of sixteen SHONO patients receiving care on the seventh floor of Touro when Hurricane Katrina made landfall.
The SHONO unit was primarily staffed by Sethany Johnson, a registered nurse, and Jacqueline Stampley, a licensed practical nurse, during and following the aftermath of Hurricane Katrina. Sequilla Gant, who is a licensed registered nurse, was the Chief Nursing Officer of SHONO. Nurse Gant was on the SHONO unit during Hurricane Katrina, but left the unit on Wednesday, August 31, 2005. Eight other SHONO employees left the SHONO unit.
As a result of Hurricane Katrina, the SHONO unit and Touro lost electrical power. The temperature rose on the SHONO unit and within Touro. It is disputed I,.¡between the parties as to whether Touro provided spot coolers, conditioned air or other mechanical cooling systems to the SHONO unit at that time. Mr. Fal-cone’s body temperature gradually rose to over 107 degrees Fahrenheit in the days following the loss of power to the premises. Mr. Falcone expired in the SHONO unit on September 1, 2005. His medical records list his cause of death as being “cardiopulmonary arrest 2° [secondary to] hyperthermia.”[2]
The Appellants filed suit in December 2006 against SHONO and Touro seeking survival and wrongful death damages as a result of Mr. Falcone’s death. The Appellants later reached a settlement with SHO-NO and it was dismissed from the lawsuit. A jury trial was held from early to late July 2012, and the sole verdict of the jury was that Touro was not negligent. A judgment reflecting the verdict was signed by the district court on August 6, 2012. The Appellants filed a motion for appeal and this timely appeal followed.
The Appellants raise three (3) assignments of error on appeal:
1. the jury was manifestly erroneous in failing to find that the Appellants proved by a preponderance of the evidence that Touro was negligent;
2. the jury was manifestly erroneous in failing to find that the Appellants proved by a preponderance of the evidence that Touro’s premises during the aftermath of Hurricane Katrina were unreasonably dangerous; and
3. the jury was manifestly erroneous in failing to find that Touro, pursuant *645 to its Lease and Services Agreements, was required to provide air conditioning and/or sufficient ventilation, and that Touro failed to provide same.
|4Standard of Review and Negligence Burden of Proof
Questions of fact as determined by the factfinder, be it a jury or a judge, are reviewed under the manifest error or clearly wrong standard of review. Sassone v. Doe, 11-1821, pp. 2-3 (La.App. 4 Cir. 5/23/12), 96 So.3d 1243, 1245. Furthermore, “where two permissible views of the evidence exist, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong.” Sassone, 11-1821, p. 3, 96 So.3d at 1245. In order to reverse findings of the factfinder, “an appellate court must undertake a two-part inquiry: (1) the court must find from the record that a reasonable factual basis does not exist for the finding of the trier of fact; and (2) the court must further determine the record establishes the finding is clearly wrong.” Harold A. Asher, CPA, LLC v. Haik, 12-0771, p. 4 (La.App. 4 Cir. 4/10/13), 116 So.3d 720, 723-24 (citing S.J. v. Lafayette Parish Sch. Bd., 09-2195, p. 12 (La.7/6/10), 41 So.3d 1119, 1127). Lastly, we note that questions of law are reviewed de novo. See First Nat. Bank, USA v. DDS Const., LLC, 11-1418, pp. 10-11 (La.1/24/12), 91 So.3d 944, 952.
A plaintiff must prove five (5) separate elements in order to succeed on a negligence claim: (1) whether the defendant had a duty to conform his conduct to a specific standard of care; (2) whether the defendant’s conduct failed to conform to the appropriate standard of care [breach of duty]; (3) whether the defendant’s substandard conduct was a cause-in-fact of the plaintiffs injuries; (4) whether the defendant’s substandard conduct was a legal cause of the plaintiffs injuries; and (5) whether the plaintiff was damaged. Milbert v. Answering Bureau, Inc., 13-0022, p. 8 (La.6/28/13), 120 So.3d 678 [citations omitted]. Thus, we address the arguments raised by the Appellants in their assignments of error by discussing whether the jury erred in its consideration of the aforementioned elements.
|R1. Duty to Conform to a Specific Standard of Care
The Appellants aver that Touro owed Mr. Falcone two main duties: a duty to provide adequate ventilation, and a duty to protect Mr. Falcone against unreasonable risks of harm.
a. Duty to provide ventilation
Regarding their argument that Touro owed a duty to Mr. Falcone to provide adequate ventilation, the Appellants principally rely upon a prior case decided by our Court, Serou v. Touro Infirmary, 12-0089 (La.App. 4 Cir. 1/9/13), 105 So.3d 1068. Serou involved a wrongful death and survival action filed on behalf of Mr. Falcone’s SHONO roommate, Gordon Serou, Sr. (“Mr. Serou”), who also expired following Hurricane Katrina.
The Appellants aver that this Court set forth a standard in Serou which establishes that Touro owed Mr. Falcone a duty to provide adequate ventilation. They contend that our Court established said duty based upon the testimony of Touro representative Scott Landry (“Mr. Landry”), who interpreted the requirements of the Lease Agreement and Services Agreement between SHONO and Touro.
In response, Touro argues that it leased half of its seventh floor to SHONO, an independent juridical entity, to operate a long term acute care facility. Touro concedes that it had a duty to provide ventilation, as this Court held in Serou, but it *646 fulfilled this duty by providing fans and opening windows in Mr. Falcone’s room.
Duty is a question of law; the inquiry is whether the plaintiff has any law (statutory, jurisprudential, or arising from general principles of fault) to support the claim that the defendant owed him a duty. Perkins v. Entergy Corp., 98-2081, p. 22 (La.App. 1 Cir. 12/28/99), 756 So.2d 388, 404 (citing Faucheaux v. Terrebonne Consolidated Government, 615 So.2d 289, 292 (La.1993)). “As a question of law, duty is a legal question subject to de novo review on appeal”. Faulkner v. The McCarty Corp., 02-1337, p. 2 (La.App. 4 Cir. 6/11/03), 853 So.2d 24, 27.
In Serou, the plaintiffs, Mr. Serou’s surviving spouse and children, filed suit against SHONO, Touro and Aggreko LLC (“Aggreko”), which was Touro’s emergency generator services provider. Mr. Serou was a 67 year-old patient with Parkinson’s disease, dementia, and coronary artery disease. Mr. Serou was a resident of a nursing home where he received hospice care; however, Mr. Serou was admitted into SHONO while he was recovering from treatment for bedsores. He was declared dead on August 31, 2005, and his chart states that he too “expired 2° [secondary] to heat.” Serou, 12-0089, pp. 1-10, 105 So.3d 1068, 1074-1078.
The Serou plaintiffs filed suit against SHONO, Touro and Aggreko seeking wrongful death and survival damages; however, they later settled with both'SHO-NO and Aggreko. After a bench trial, the district court allocated fault amongst the defendants as follows: 70% to SHONO, 30% to Touro and 0% to Aggreko. The district court awarded the plaintiffs damages of $345,000 against Touro, who appealed the judgment. For the purposes of our discussion, we address only that portion of the appeal that involves the negligence claims the plaintiffs raised against Touro. Id.
On appeal, our court upheld the district court’s finding that Touro was negligent, reasoning that the evidence supported the district court’s finding that Touro had a duty to provide adequate ventilation[3] for patients; however, we held that pursuant to the requirements of the Joint Commission of the Accreditation of 17Hospital Organizations (“JCAHO”), the ability to provide refrigerated air to any part of the hospital was not required. Id., 12-0089, p. 30, 105 So.3d at 1090.
Having already recognized that Touro owed a duty to SHONO patients to provide adequate ventilation, we find that the Appellants established jurisprudentially that Touro owed Mr. Falcone the same duty,
b. Duty to protect Mr. Falcone against unreasonable risks of harm
The Appellants maintain that our duty inquiry should focus on the broader issue of whether the environmental conditions on the SHONO unit were unreasonably dangerous. The Appellants contend that Touro had an obligation to provide whatever it could to prevent the premises from being unreasonably dangerous, whether that required providing air conditioning, spot coolers, ventilation or otherwise. The Appellants aver that Touro failed to provide the requisite safe premises. The Appellants additionally argue that Touro owed Mr. Falcone a duty to protect him against unreasonable risks of harm pursuant to two agreements that were in place between Touro and SHONO: a Lease Agreement and a Services Agreement.
*647 The Appellants maintain that Touro, as the owner or operator of a facility, owed Mr. Falcone a duty to exercise reasonable care for the safety of persons on its premises and to not expose such persons such as Mr. Falcone to unreasonable risks |aof injury or harm under La. Civ.Code articles. 2317.1 and 2322[4] as well as Mundy v. Dep’t of Health & Human Res., 620 So.2d 811, 813 (La.1993). The Appellants contend that this duty was owed despite the fact that Mr. Falcone was not a Touro patient.
Touro maintains that even if it had a duty to maintain the SHONO unit in a reasonable safe condition, said unit was fit and reasonably safe at the time at issue.
With regard to the duty to protect against unreasonable risks of harm, the owner or operator of a facility generally has the duty of exercising reasonable care for the safety of persons on his premises and the duty of not exposing such persons to unreasonable risks of injury or harm. Manning v. Dillard Dep’t Stores, Inc., 99-1179 (La.12/10/99), 753 So.2d 163. Additionally, the owner or custodian must discover any unreasonably dangerous condition on the premises, and either correct the condition or warn potential victims of its existence. Smith v. The Runnels Schools, Inc., 04-1329, p. 4 (La.App. 1 Cir. 3/24/05), 907 So.2d 109, 112.
Nonetheless, the Supreme Court has further explained that an owner generally has no duty to protect against an open and obvious hazard. Pryor v. Iberia Parish Sch. Bd., 10-1683, p. 3 (La.3/15/11), 60 So.3d 594, 596 [citation omitted]. The Supreme Court has reasoned:
[T]he fact-finder, employing a risk-utility balancing test, determines which risks are unreasonable and whether those risks pose an open and obvious hazard. In other words, the fact-finder determines whether defendant has breached a duty to keep its property in a reasonably safe condition by failing to discover, obviate, or warn of a defect that presents an unreasonable risk of harm.
Because the determination of whether a defective thing presents an unreasonable risk of harm encompasses an abundance of factual findings, which differ greatly from case to case, followed by an application of those facts to a less-than scientific standard, a reviewing court is in no better position to make the determination than the jury or trial court.’
Broussard v. State ex rel. Office of State Bldgs., 12-1238, pp. 12-13 (La.4/5/13), 113 So.3d 175, 185-86. [Emphasis added and citations omitted]. Thus, if the facts of a particular case show that the complained-of condition should be obvious to all, the *648 condition may not be unreasonably dangerous, and the defendant may owe no duty to the plaintiff. Pryor, 10-1683, pp. 3-4, 60 So.3d at 596 (citing Eisenhardt v. Snook, 08-1287 (La.3/17/09), 8 So.3d 541; Dauzat v. Curnest Guillot Logging, Inc., 08-0528 (La.12/2/08), 995 So.2d 1184.)
The trier of fact decides which risks are unreasonable based upon the facts and circumstances of each case. Id. Moreover, the ultimate determination of unreasonable risk of harm is subject to review under the manifest error standard. Id., 10-1683, p. 4 (La.3/15/11), 60 So.3d 594, 596 [citation omitted].
In the instant matter, the record shows that there was conflicting testimony presented as to whether Touro’s premises were unreasonably dangerous. For instance, Zan Green, who was employed by Touro as an HVAC mechanic and was on the premises in the aftermath of Hurricane Katrina, testified that he was | mpersonally monitoring all the floors within Touro. He testified that while some areas of the hospital were “warmer” than others, he would not describe the building as being hot. He further testified that Touro procured spot coolers, which were placed in certain areas, including nursing stations, to provide extra cooling. Mr. Landry also testified that spot coolers were provided. Mr. Green testified that he did not monitor the ambient temperature within the hospital and he relied on his body temperature as an indicator of the temperature of the building.
Additionally, Scott Landry (“Mr. Landry”), who was Touro’s director of facilities at the time of Hurricane Katrina, also testified that he was in the building during Hurricane Katrina. He testified that he cpnsistently made rounds through the building and the SHONO unit, and that the building was warm, but was not hot. He further explained that two (2) of Tou-ro’s six (6) generators went out of service, but the generator servicing the SHONO unit did not stop working. He testified that the same circuit that served the SHO-NO unit served four other Touro patient units; therefore, if something was substantially wrong with the service on the SHO-NO unit, the same problem would have occurred in Touro’s units. He further testified that Touro had over 100 fans, and that no request to provide a patient a fan was denied by him. Additionally, Mr. Landry explained that Touro followed the guidelines for hospital accreditation in cooling only portions of the Touro building, which did not include regular patient units, such as the SHONO unit. He testified that pursuant to a plan that was implemented in 2003, the SHONO unit was assigned two spot-coolers and these were indeed provided. Lastly, Mr. Landry testified that healthcare requirements do not include providing air conditioning during an emergency.
|nNurses Gant and Johnson, however, testified as to the following facts: 1) it was “ridiculously” hot on the SHONO unit; 2) the floors on their unit were slippery due to the heat; 3) there were no spot coolers on the SHONO unit, and 4) that they themselves were adversely affected by the heat in addition to the SHONO patients.
All of the witnesses who testified agree that the temperatures rose on the premises and that the windows were open on the seventh floor. There is no agreement, however, as to the extent of the heat on the seventh floor. When there are two permissible views of the evidence, the trier of fact’s choice between them cannot be manifestly erroneous. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). As the Supreme Court has explained, “it is not hard to prove a reasonable basis for a finding, which makes the manifest error doctrine so very difficult to breach.” Menard v. *649 Lafayette Ins. Co., 09-1869, pp. 21-22 (La.3/16/10), 31 So.3d 996, 1011. In the matter sub judice, the jurors weighed conflicting testimony as to whether the temperature within the building rose to a level of constituting an unreasonably safe condition, but may have concluded that the heat was not an unreasonable risk of harm. Moreover, as noted above in Pryor, the jury may not have determined that the “heat” itself was an unreasonable condition if they perceived it as being an open and obvious hazard.
Moreover, regarding the Lease Agreement, the Appellants argue that the jury was manifestly erroneous and clearly wrong in its interpretation of the contract, which they argue required Touro to provide air conditioning to SHONO during and after Hurricane Katrina. They aver that the jury’s interpretation of the 112contracts impermissibly used extrinsic evidence, in violation of the terms of the agreements and in violation of La. Civ. Code art. 1848.[5]
Touro responds that the duties and obligations owed to SHONO and its patients are solely contained in the Lease Agreement and a Services Agreement that was executed between the parties. Touro maintains that nowhere in either of those agreements was it required to provide central, refrigerated air conditioning to the SHONO unit during periods of external power failure. Likewise, Touro argues that it had no duty to provide central, refrigerated air conditioning for its patient population in the event of an external power outage. It contends that the jury properly found that Touro was not negligent as witnesses attested to the fact that Touro had no such obligations pursuant to the aforementioned agreements.
The Lease Agreement at issue states in pertinent part:
IX. Fixtures and Equipment. Lessor shall be responsible for all maintenance and repairs associated with the heating, ventilation, lighting, plumbing, electrical systems, air conditioning, gas, oxygen (oxygen equipment owned and operated by Lessor), water and sewage in the leased premises and shall be responsible for the entire cost of repairs and replacement of such equipment.
Furthermore, a Services Agreement between the parties dated June 27, 1997, contained the following emergency power clause:
9. Emergency Power Supply. Touro shall provide adequate emergency power supply and emergency electrical service to accommodate each patient bed of the leased premises specified in the Lease Agreement in accordance with applicable safety requirements and as customarily maintained in an acute care facility.
|1sAs noted above, there is conflicting testimony as to whether Touro fulfilled its obligation to supply the SHONO unit with emergency power. Additionally, it is unclear as to whether Touro’s obligation to provide “adequate” emergency power encompassed providing the SHONO unit with air conditioning during a power outage pursuant to the “applicable safety requirements and as customarily maintained in an acute care facility”. We note that Mr. Landry testified that he walked throughout the premises, including the SHONO unit, and that every patient room had a headwall or headboard that had *650 electricity. Mr. Landry, however, could not recall whether Mr. Falcone’s room specifically had electricity going to the headboard. There was sufficient testimony provided, however, to provide the jury a reasonable basis for concluding that adequate emergency power was supplied to the SHONO unit, pursuant to the agreements in place.
Furthermore, in Serou, we reasoned that, under the requirements of the JCA-HO, the ability to provide refrigerated air to any part of the hospital was not required. Serou, 12-0089, p. 30, 105 So.3d at 1090. In reaching that holding, our Court considered the testimony of Mr. Landry who explained that the Lease Agreement and the Services Agreement that were in place between SHONO and Touro were inapplicable to situations where Touro itself was operating on emergency back-up power:
Mr. Landry acknowledged that, pursuant to the Lease and Services Agreement, Touro was responsible for providing emergency backup power and air conditioning to the SHONO unit, the leased space. However, he testified that it was not Touro’s responsibility to provide air conditioning to the SHONO unit when Touro was on emergency backup power, as it was post-Hurricane Katrina.' Mr. Landry explained that providing air conditioning in the event of an outside power failure was not a requirement under the JCAHO guidelines and for | j 4that reason, it was not included as a requirement under its contractual arrangements with SHONO. [Emphasis added.]
Id., 12-0089, p. 25, 105 So.3d at 1087.
Therefore, under a manifest error standard of review, we do not find that the jury was manifestly erroneous if it found that a duty to protect Mr. Falcone against an unreasonable risk of harm either did not exist or that Touro met its contractual obligations to protect Mr. Falcone against unreasonable risks of harm under the facts of this case. Nevertheless, we hold that the sole duty owed by Touro was to provide ventilation,' as per Serou.
2. Breach and Causation
We address the elements of breach and causation in this section as the jury in this matter considered conflicting testimony as to each of these elements. Factual findings, including breach of duty, cause-in-fact, and legal causation, are subject to the manifest error standard of review. Watters v. Dep’t of Soc. Servs., 11-1174, p. 4 (La.App. 4 Cir. 3/14/12), 102 So.3d 118, 123.
Having determined that Touro owed Mr. Falcone a duty to provide adequate ventilation, we address a compelling argument raised by the Appellants: there must have been inadequate ventilation for Mr. Fal-cone because our Court has already held that there was inadequate ventilation for Mr. Serou.
It is undisputable that Mssrs. Ser-ou and Falcone were subjected to the same conditions, although having distinct medical and physical conditions; thus, the Appellants’ argument seems sound. However, there is a marked difference between the procedural posture of Mr. Serou’s case and the instant one. When the Serou appeal was considered, the district court as the finder of fact determined that 11fiTouro was negligent and our Court reviewed that judgment under a manifest error standard. In the instant matter, the finder of fact, the jury, reached an outcome differing from that of the district court in Serou. The jury in this case determined that Tou-ro was not negligent and we too review that judgment under the manifest error standard. It is clear from Serou and the record in the instant matter that both find *651 ers of fact faced conflicting testimony regarding each element of negligence the Serou and Falcone Appellants were required to establish.
As discussed above, there was a basis in the record for the jury to find that Touro provided adequate ventilation to the SHONO unit. Mssrs. Green and Landry discussed that the premises were monitored and that spot coolers were provided. Mr. Green further explained that the windows on the seventh floor were crank-operated, and thus, could be opened. Tou-ro also presented the following testimony as to the conditions on the SHONO unit and on the premises in general:
• Dr. Victor E. Tedesco testified that there were spot coolers throughout the facility, including at least one on the SHONO unit. He further testified that the temperature on the SHONO unit was warmer than the hospital is normally, but it was not that uncomfortable.
• Nurse Johnson testified that there was some electrical power on the SHONO unit on August 31, 2005, and that there was sufficient electrical power to run fans at noon on August 31, 2005, as well as use lights in the nursing station adjacent to Mr. Falcone’s room. Nurse Johnson further testified that the windows in Mr. Falcone’s room were open and a fan and ice packs were being used to cool Mr. Falcone.[6]
[1fiIf the jury believed any of the aforementioned testimony or testimony from other witnesses and experts that substantiated Touro’s position that it did meet its duty to provide ventilation, the jury had a basis to determine that there was not a breach of duty. As discussed above, the fact finder’s decision cannot be manifestly erroneous where there are two permissible views of the evidence. Thus, we do not find that Touro breached its duty to provide ventilation.
Similarly, we note that the Appellants cannot establish that the jury erred in its determination that Touro’s actions were not the cause in fact or legal cause of Mr. Falcone’s death. A plaintiff in a tort case must prove causation by a preponderance of the evidence. Lasha v. Olin Corp., 625 So.2d 1002, 1005 (La.1993). To meet the cause-in-fact element, a plaintiff must prove only that certain conduct was “a necessary antecedent of the accident, that is, but for the defendant’s conduct, the incident probably would not have occurred.” State Farm Mut. Auto. Ins. Co. v. LeRouge, 07-0918, p. 18 (La.App. 4 Cir. 11/12/08), 995 So.2d 1262, 1275 [citation omitted]. Moreover, the essence of the legal cause inquiry is whether the risk and harm encountered by the plaintiff fall within the scope of protection of the duty. Id., 07-0918, pp. 18, 995 So.2d at 1275-76.
In this matter, the jury was presented with conflicting testimony from at least two of Mr. Falcone’s treating physicians, Dr. P. Eugene Parrino, the cardio thoracic surgeon who performed Mr. Fal-cone’s heart surgery, and neurologist John L. Freiberg (“Dr. Freiberg”). As treating physicians, the testimony of both doctors were entitled to greater weight than the testimony of Mr. Falcone’s non-treating physicians. See Menard v. Lafayette Ins. Co., 09-1869 (La.3/16/10), 31 So.3d 996.
|17The Appellants principally rely upon the testimony of Dr. Parrino to support their argument that Touro’s unreasonably *652 dangerous premises were both the legal cause and cause in fact of the death of Mr. Falcone, who they aver was a healthy 56 year old. Dr. Parrino, the Appellants aver, treated Mr. Falcone for longer than any other witness at this trial and therefore his opinion should be given more credibility. Dr. Panino retained control of Mr. Falcone’s care throughout his stay at Ochsner from August 12, 2005 through August 25, 2005 when Mr. Falcone was transferred to SHONO.
Dr. Parrino testified that he performed the August 12, 2005 surgery to correct Mr. Falcone’s aortic aneurysm. The operation went well and Dr. Parrino successfully reconstructed Mr. Falcone’s aorta. Mr. Fal-cone was taken to the ICU and that night he suffered an arrhythmia, but was properly resuscitated. Mr. Falcone was on heavy sedation for the 10 days following the August 12, 2005 surgery and did not “wake up” from the surgery until August 22, 2005, at which point he was taken off of heavy sedation as well as the ventilator.
The Appellants aver that Dr. Parrino emphatically testified that the neurological tests performed while Mr. Falcone was heavily sedated were not an accurate reflection of Mr. Falcone’s potential for recovery. Dr. Parrino testified that when he discharged Mr. Falcone on August 25, 2005, Mr. Falcone’s heart was stable, he had awoken from the coma and was more alert, he was following commands, and he was improving neurologically.
Dr. Parrino testified, after reviewing the SHONO records, that Mi’. Falcone had no fever prior to Katrina and had a normal white blood cell count; therefore he felt “very strongly” that there was not likely an infection. Nevertheless, Dr. Parrino explained in his testimony that he started Mr. Falcone on Vancomycin and | iSantibiotics as a prophylactic as a precautionary measure. He opined that Mr. Fal-cone continued to improve neurologically at SHONO prior to Hurricane Katrina.
The Appellants aver that Dr. Parrino also clarified that upon Mr. Falcone’s discharge to SHONO, Mr. Falcone was not terminally ill. Thus, a fair and reasonable reading of the record is that Mr. Falcone was improving and had significant brain function prior to Hurricane Katrina. Lastly, they aver that Mr. Falcone’s medical records state that he expired from hyperthermia because said records reflect that a treating physician listed his cause of death as: “cardiopulmonary arrest 2° [secondary to] hyperthermia.”
Although Dr. Parrino did testify to the facts indicated above, we note that the jury was presented with other testimony as to Mr. Falcone’s medical condition immediately before his death from one of his last treating physicians, Dr. Freiberg, who began treating Mr. Falcone on August 26, 2005.
Dr. Freiberg characterized Mr. Falcone as a critically ill patient with multiple life-threatening problems. Indeed, he opined that Mr. Falcone had septicemia or sepsis, which he explained usually has effects on the nervous system. He testified that Mr. Falcone’s sepsis impacted his nervous system. He further explained that Mr. Fal-cone’s septic condition “was one of the reasons his [Mr. Falcone’s] brain, mental functions was so poor.” He opined that Mr. Falcone’s cause of death was his infection. Dr. Freiberg testified that Mr. Fal-cone was being treated for an infection and had documented bacteria in his blood.
Additionally, he expounded that Mr. Fal-cone’s behavior was not that of someone who had suffered a minor stroke. He opined that Mr. Falcone’s aortic | ^surgery was less than a hundred percent successful because Mr. Falcone did get “catastrophic” brain damage from the surgery.
*653 Dr. Freiberg testified that a lack of basic services at Touro contributed to Mr. Falcone’s death as well as the heat in the hospital. However, he testified that the heat was not a main factor in Mr. Fal-cone’s death. He testified that the root cause of Mr. Falcone’s death was a severe aortic problem and the complications of the surgery that left Mr. Falcone in a completely debilitated state.
In the matter sub judice, the record reflects that the jury was again presented with conflicting testimony. While Dr. Par-rino testified that Mr. Falcone was in good health, that his surgery was successful, his condition was gradually improving, and that heat and a lack of ventilation caused his death, Dr. Freiberg opined that Mr. Falcone’s aortic surgery was unsuccessful, he had sepsis, suffered a severe stroke and that the temperature in the hospital did not cause his death. We recognize that the jury had a reasonable basis for concluding that even if Touro failed to provide adequate ventilation to Mr. Falcone, that this failure was neither the cause-in-fact nor the legal cause of Mr. Falcone’s declining health and his death. While a different trier of fact may have reached another conclusion when presented with the same testimony and evidence, there is a basis in the record for the jury in the instant case to have made this determination. Thus, we do not find that the jury was manifestly erroneous or clearly wrong in determining that the elements of cause-in-fact and legal cause were not established.
The Appellants failure to establish that the jury manifestly erred when it determined that one or more of the negligence elements was not met was sufficient to defeat this negligence action. Thus, we pretermit a discussion of damages.
|2qDECREE
For the foregoing reasons, the judgment of the district court, adopting the jury verdict and finding that Touro Infirmary was not negligent in the death of Michael Falcone, is affirmed.
AFFIRMED.

. The Appellants are Michael Falcone’s parents, Vincent Falcone, Sr., and Dorothy Fal-cone, and his siblings, Mary Falcone Morgan, Christine Impastato, Daniel A. Falcone, Stephen J. Falcone, Peter J. Falcone, Dorothy Trocquet, Susan Falcone Bourgeois and Vincent Falcone, Jr.

. Hyperthermia means elevated body temperature, as explained by Nurse Johnson.

. Adequate ventilation or conditioned air is air that is being filtered or moving. In Serou, our court noted that there is a distinction between refrigerated or chilled air and conditioned or moved air. Id., 12-0089, p. 26, 105 So.3d at 1088.

. La. C.C.P. art. 2317.1 states:
The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.
La. C.C.P. art. 2322 states:
The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice or defect in its original construction. However, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known of the vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

. La. Civ.Code art. 1848 provides:
Testimonial or other evidence may not be admitted to negate or vary the contents of an authentic act or an act under private signature. Nevertheless, in the interest of justice, that evidence may be admitted to prove such circumstances as a vice of consent or to prove that the written act was modified by a subsequent and valid oral agreement.

. We further note that Nurse Johnson testified that she was administering fluids to Mr. Fal-cone through an IV bag that she had adjusted. She placed cool towels over his body and dampened his lips to decrease his temperature. She also testified that when the generators failed the box fans did not work.