Judge Roland L. Belsome
In this survival action, the Defendants, Touro Infirmary (Touro) and Healthcare Casualty Insurance, appeal the trial court's judgment in favor of the Plaintiff, Donald Ponseti. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
On Saturday, August 27, 2005, Mr. Marvin Ponseti, who was seventy-five years old, was admitted to Touro due to a low-grade fever and complaints concerning an infected left leg. Mr. Ponseti was initially admitted as a non-urgent (triage level three) patient. Subsequently, on Sunday, August 28, 2005, Mr. Ponseti went into atrial fibrillation[1] and was treated with medication. After diagnosing the heart issue, Mr. Ponseti was transferred to the telemetry unit on the sixth floor of the hospital. However, as a result of the medication, his heart returned to normal sinus rhythm before he arrived to the telemetry unit.
As a result of Hurricane Katrina, Touro lost power at approximately 3:00 a.m. on Monday, August 29, 2005. Shortly after, Touro lost water pressure. As a result of the heat and deteriorating conditions, management made the decision to evacuate the hospital.
*1100 On the morning of Wednesday, August 31, 2005, Mr. Ponseti's temperature began to gradually rise. His last chart note at approximately 9:35 a.m. reflected that his fever was 101.4. On Wednesday afternoon, Mr. Ponseti was brought outside to the third floor parking garage for evacuation. While waiting, Mr. Ponseti's declining condition was presented to Dr. Royce Yount, his treating cardiologist. After assessing Mr. Ponseti, Dr. Yount immediately started a code for ventricular fibrillation.[2] Mr. Ponseti was brought back inside into the third floor Intensive Care Unit for continued code treatment. However, the treatment was unsuccessful and Mr. Ponseti expired.
As a result of Mr. Ponseti's death, the Plaintiff, Donald Ponseti,[3] filed a Petition for Damages asserting survival claims based on premises liability.[4] The Petition for Damages was subsequently amended to include certain medical malpractice claims.[5] At that time, the Defendants filed an Exception of Prematurity on the medical malpractice claims, which was granted by the trial court. After a medical review panel ruled in favor of the Defendants, the trial court granted the Defendants motion for summary judgment and dismissed the medical malpractice claims.
The case continued to trial on the premises liability claims. After a two-day bench trial, the trial court rendered a judgment in favor of the Plaintiff in the amount of $50,000.00. The Defendants appealed, and the Plaintiff filed an answer to the appeal.
DISCUSSION
On appeal, the Defendants assert two assignments of error alleging that the evidence was insufficient to support the trial court's award for survival damages. Conversely, in his answer to the appeal, the Plaintiff argues for an increase in the damages award.
SUFFICIENCY OF THE EVIDENCE
In their assignments of error, the Defendants argue that the Plaintiff failed to demonstrate two critical elements required in a survival action based in negligence: a breach of the duty of care, and damages. As it relates to the sufficiency of the evidence, the fundamental principle of tort liability in Louisiana is that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La. C.C. art. 2315. In any negligence action, including a premises liability action, the plaintiff has the burden of proving by a preponderance of the evidence the following five elements: 1) duty of care owed by defendant to plaintiff; 2) breach of that duty by defendant; 3) cause-in-fact; 4) legal causation; and 5) damages to plaintiff caused by that breach. Zimko v. American Cyanamid , 03-0658, p. 21 (La. App. 4 Cir. 6/8/05), 905 So.2d 465, 481-82.
DUTY/BREACH
Concerning the duty and breach elements, the Defendants do not dispute that Touro had a duty to provide adequate ventilation for its patients, see *1101 Falcone v. Touro Infirmary , 13-0015, 13-0016, pp. 6-7 (La. App. 4 Cir. 11/6/13), 129 So.3d 641, 646. However, they argue that, according to their expert, Touro's duty was to provide "non-toxic, breathable air." They further maintain that since Mr. Ponseti was brought out to the parking deck in stable condition, the Defendants met their duty to provide breathable air. Therefore, they conclude the evidence does not establish a breach of duty to provide adequate ventilation. We disagree.
"Duty is a question of law; the inquiry is whether the plaintiff has any law (statutory, jurisprudential, or arising from general principles of fault) to support the claim that the defendant owed him a duty." Falcone , 13-0016, p. 5, 129 So.3d at 645. Despite the expert testimony at trial, this Court has already held that Touro was required to provide adequate ventilation, which meant "air that is being filtered or moving." Falcone , 13-0016, p. 6, 129 So.3d at 646 n.3 (citing Serou v. Touro Infirmary , 12-0089, p. 26 (La. App. 4 Cir. 1/9/13), 105 So.3d 1068, 1088 ).[6] In addition, "ventilation" is defined as the "circulation of air" or "a system or means of providing fresh air." VENTILATION, MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/ventilation (last visited November 7, 2018).
Having concluded that Touro had a duty to provide circulating air, we turn to the issue of whether the Plaintiff established a breach of duty. Here, the trial court was presented with conflicting views of the evidence. In particular, Elysha Oriol testified that she was an oncology nurse stationed in the telemetry unit during the hurricane. She explained that when the building lost power, the loss of air conditioning was apparent after a couple of hours. She further described the heat as "oppressively hot and stagnant." She further testified that she did not see any fans, open windows or spot coolers in the telemetry unit. Significantly, she explained that she did not feel any type of movement in the air. Likewise, Robin Caceres, Mr. Ponseti's treating nurse, testified that there was no fresh air and it "felt like there wasn't air moving." To the contrary, Dr. Yount and Dierdre DeGruy, a nurse who was assisting Dr. Yount, testified that they saw fans and spot coolers throughout the building; however, Ms. DeGruy did not specifically recall seeing spot coolers on the sixth floor.[7]
Giving weight to the treating nurses' testimonies that there was no fresh or circulating air in the telemetry unit, the trial court found that Touro breached its duty to provide adequate ventilation. Questions of fact as determined by the factfinder, be it a jury or a judge, are reviewed under the manifest error or clearly wrong standard of review. Falcone , 13-0015, p. 4, 129 So.3d at 645. When there are two permissible views of the evidence, the trier of fact's choice between them cannot be manifestly erroneous. Rosell v. ESCO , 549 So.2d 840, 844 (La. 1989). Accordingly, we do not find that the trial court was manifestly erroneous in finding that Touro breached its duty to provide adequate ventilation to Mr. Ponseti.
SURVIVAL DAMAGES AND QUANTUM
Turning to the damages element, both the Defendants and the Plaintiff take issue with the survival damage award. While the Defendants argue that the evidence was not sufficient to support the award of survival *1102 damages, the Plaintiff argues that award should be increased.
The Defendants maintain that there was no evidence presented to establish that Mr. Ponseti's experienced pain and suffering prior to his death. "Survival damages may be awarded for the pre-death mental and physical pain and suffering of the deceased. A jury may award damages for pain and suffering in a survival action where there is the smallest amount of evidence of pain, however brief, on the part of the deceased, based on his actions or otherwise." Thompson v. Crawford , 17-1400, p. 1 (La. 11/13/17), 229 So.3d 451, 452 (citation omitted). In determining survival damages, the factfinder should consider the severity and duration of any pain and suffering or any pre-impact fear experienced by the deceased up to the moment of death. Maldonado v. Kiewit Louisiana Co. , 12-1868, p. 37 (La.App. 1 Cir. 5/30/14), 152 So.3d 909, 936 (citation omitted). Survival damages are awarded "if there is even a scintilla of evidence of pain or suffering on the part of the decedent, and fright, fear, or mental anguish during an ordeal leading to the death is compensable." Leary v. State Farm Mut. Auto. Ins. Co. , 07-1184, pp. 3-4 (La. App. 3d Cir. 3/5/08), 978 So.2d 1094, 1098 (quotation omitted).
However, where there is no indication that a decedent consciously suffered, an award for pre-death physical pain and suffering should be denied. Maldonado , 12-1868, pp. 37-38, 152 So.3d at 936 (citation omitted). The question of whether the decedent actually consciously suffered is a factual issue, governed by the manifest error-clearly wrong standard. Id.
In this case, the evidence revealed that after the hospital lost power and water pressure, it became unsanitary and unbearably hot. The toilets were backed up and the patients could not bathe or wash their hands. Nurse Oriol testified that the patients were sweating and miserable. They were complaining of being hot and she provided ice packs when available.
Nurse Caceres remembered changing sheets because the patients' beds were drenched in sweat. She testified that the circumstances were "beyond everybody being anxious and worried." She further testified that she was terrified and felt unsafe. In particular, she observed fires from the windows, people looting, and people walking around outside with baseball bats and pipes. She also started seeing people she did not recognize in the hospital.
After his death, Dr. Samantha Huber, M.D. performed the autopsy on Mr. Ponseti. She concluded that Mr. Ponseti's cause of death was cardiac arrhythmia caused by the stress of Hurricane Katrina. Dr. Jim Hirschman, an expert in internal medicine with a specialty in cardiology, testified that the stress to Mr. Ponseti's body, including the heat and sweating, the altered nutrition and inadequate hydration promoted a new atrial fibrillation, which proceeded to cause ventricular fibrillation and death. Considering the physical and mental stresses of the hospital environment post-Katrina, we do not find the trial court was manifestly erroneous in awarding survival damages for Mr. Ponseti's pain, suffering, fear and mental anguish during this ordeal before his death. See Leary , supra .
Turning to quantum, the issue is whether the trial court abused its discretion in awarding the Plaintiff only $50,000.00 in survival damages for the two-and-a-half days he suffered prior to his death. When rendering the award, the trial court reasoned that "there was very little evidence of pain and suffering."
"In the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the *1103 judge or jury." La. C.C. art. 2324.1. According to the Supreme Court:
The assessment of "quantum," or the appropriate amount of damages, by a trial judge or jury is a determination of fact, one entitled to great deference on review. As such, "the role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact." Youn v. Maritime Overseas Corp. , 623 So.2d 1257, 1260 (La. 1993). Moreover, "before a Court of Appeal can disturb an award made by a [fact finder,] the record must clearly reveal that the trier of fact abused its discretion in making its award. Only after making the finding that the record supports that the [trier of fact] abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion of that court."
Wainwright v. Fontenot , 00-0492, p. 6 (La. 10/17/00), 774 So.2d 70, 74 (quotation omitted).
In light of the limited evidence of pain and suffering produced at trial, we cannot say that the survival damages award is unreasonably low. Accordingly, we find no abuse of discretion in the trial court's survival damages award of $50,000.00 for Mr. Ponseti's pain and suffering.[8]
CONCLUSION
For the foregoing reasons, the trial court's judgment awarding the Plaintiff survival damages is affirmed.
AFFIRMED
BARTHOLOMEW-WOODS, J. DISSENTS, IN PART, WITH REASONS.
BARTHOLOMEW-WOODS, J. DISSENTS, IN PART, WITH REASONS.
I respectfully agree with the majority's opinion to affirm the trial court's judgment in favor of Plaintiffs-Appellees. Presently, the trial court did award damages. However, Plaintiffs-Appellees argue that the trial court's award of $50,000.00 is too low; I agree. I would increase the amount of survival damages awarded to Plaintiffs-Appellees. The majority believes that the trial court did not abuse its discretion when it awarded such a minimal amount of damages; I disagree.
The Louisiana Supreme Court has reasoned,
Survival damages may be awarded for the pre-death mental and physical pain and suffering of the deceased. Temple v. Liberty Mut. Ins. Co. , 330 So.2d 891 (La. 1976). A jury may award damages for pain and suffering in a survival action where there is the smallest amount of evidence of pain, however brief, on the part of the deceased, based on his actions or otherwise. Leary v. State Farm Mut. Auto. Ins. Co. , 07-1184 (La. App. 3 Cir. 3/5/08), 978 So.2d 1094, 1098, writ denied , 08-0727 (La. 5/30/08), 983 So.2d 900 ; Etcher v. Neumann , 00-2282 (La. App. 1 Cir. 12/28/01), 806 So.2d 826, 840, writ denied , 02-0905 (La. 5/31/02), 817 So.2d 105 ; Patrick v. Employers Mut. Cas. Co. , 99-94 (La. App. 3 Cir. 8/11/99), 745 So.2d 641, 652, writ denied , 99-2661 (La. 11/24/99), 750 So.2d 987.
*1104 Thompson v. Crawford , 2017-1400, pp. 1-2 (La. 11/13/17), 229 So.3d 451, 452. Plaintiffs-Appellees argue that the trial court relied on Juanita James v. Manuel Jackson, 2004-0912 (La.App. 4 Cir. 3/2/05) 898 So.2d 596, in determining survival damages. In Juanita James , the decedent passed away within an hour of the time he began to experience symptoms and the court awarded $60,000.00. By contrast, Mr. Ponseti endured the hostile and oppressive conditions at Touro from August 29, 2005 at 3:00 a.m. until the afternoon of August 31, 2005. The majority opinion points out that both Nurse Oriol and Nurse Caceres testified that, in the hours after Touro lost electricity, the heat was oppressive and hot air stagnant; in addition, Touro also lost water pressure.
Dr. Samantha Huber, who performed an autopsy on Mr. Ponseti, testified that his death was caused by cardiac arrhythmia, which was triggered by the increasing heat, lack of water, and stress associated with Hurricane Katrina. In his affidavit, Dr. Jim C. Hirschman, an internal medicine physician with a cardiology specialty, stated that "sweltering heat, lack of ventilation, lack of electricity" and "conditions and hostile environment at Touro during Hurricane Katrina made it impossible for Mr. Ponseti to fight infection" and "caused and contributed to Mr. Ponseti's ultimate demise."
From the testimony provided in the record, we know (1) that conditions at Touro during Hurricane Katrina caused Mr. Ponseti's death and (2) the duration of time that Mr. Ponseti experienced and suffered in those conditions. Although the trial court is granted vast discretion, I find that the trial court abused its discretion by relying on Juanita James , a case factually inapposite to this matter.[1] Therefore, the amount of the survival damages awarded by the trial court was woefully insufficient, and should be increased. In Robinette v. Lafon Nursing Facility of the Holy Family , 2015-1363 (La. App. 4 Cir. 6/22/17), 223 So.3d 68, this Court affirmed, in pertinent part, that evidence was sufficient to establish that the decedent, who experienced Hurricane Katrina and its immediate aftermath as a resident of Lafon nursing home, died as a result of heat stroke and dehydration caused by exposure to extreme heat; and that wrongful death and survival damages in the amount of $1 million was not excessive. Like Mr. Ponseti, the decedent experienced Hurricane Katrina and the resulting lack of electricity and running water and extreme heat; both deaths were caused by these conditions.[2]
Further, Plaintiffs-Appellees assert, and I agree, that the following cases are more in line with the pain and suffering endured by Mr. Ponseti:
In Ruttley v. Lee, [19]99-1130 (La. App. 5th Cir. 5/17/00), 761 So.2d 777, a witness saw a young woman breathe only lightly and noted that she had a faint pulse after an automobile accident. The young woman then died at the scene. Her family was awarded $150,000.00 in survival damages.
In Estate of Hickerson v. Zimmerman, 2002-1195 (La. App. 4th Cir. 7/16/03), 853 So.2d 55, a pedestrian, killed by an automobile lived only so briefly that the autopsy report had to be used to determine that he had survived for some period of time after the accident, *1105 was awarded $400,000.00 in general damages.
In Strawder v. Zapata Haynie Corp., [19]94-453(La. App. 3rd Cir. 11/2/94), 649 So.2d 554, two (2) seamen who drowned only twenty to thirty minutes after an explosion were awarded $500,000.00 each in survival damages.
In Wingfield v. State, DOTD, 2001-2668 (La. App. 1st Cir. 11/8/02), 835 So.2d 785, a sixty (60) year old man who was in an automobile accident suffered three hours before he died. The jury awarded him $800,000.00 in survival damage. The trial court granted a JNOV reducing the survival damages to $500,000.00. However, the First Circuit reinstated the $800,000.00 survival damage award.
For the aforementioned reasons, I dissent, in part, with the majority's opinion, and would increase the survival damages award.

Dr. Royce Yount, an expert in cardiology and Mr. Ponseti's treating physician, testified that atrial fibrillation is an abnormal heart rhythm, which is common in older patients.

Dr. Yount testified that vetricular fibrillation, as opposed to atrial fibrillation, can be fatal if not treated immediately.

Donald Ponseti was Mr. Ponseti's cousin.

Initially, several other heirs were included as plaintiffs in the Petition for Damages. The petition also included wrongful death claims. However, by consent judgment on a motion to dismiss, all of the other plaintiffs except for Donald Ponseti, in his capacity as administrator and succession representative of Mr. Ponseti's succession, were dismissed from the lawsuit. In addition, the wrongful death claims were also dismissed.

Leslie Hirsch, Touro's Chief Executive Officer, was named as an additional defendant in the amended petition; however, he was later dismissed from the suit.

Notably, "[t]here is a distinction between refrigerated or chilled air and conditioned or moved air." Falcone , id.

Scott Landry, the Director of Facility Services, also testified that there were spot coolers and fans throughout the hospital.

While the Plaintiff cites to numerous cases to support an increase in the survival damage award, an examination of similar cases is unnecessary here. See Robinette v. Lafon Nursing Facility of the Holy Family , 15-1363, p. 27 (La. App. 4 Cir. 6/22/17), 223 So.3d 68, 86 (examination of awards in similar cases is only appropriate after an abuse of discretion is established).

In its oral reasons for judgment, the trial court explained its reliance on Juanita James . The Louisiana Supreme Court explained that trial court's reasons for judgment, while it does not form part of the judgment, serves as "an explication of the trial court's determinations." Wooley v. Lucksinger , 2009-0571, p. 77 (La. 4/1/11), 61 So.3d 507, 572.

The decent in Robinette died on Thursday, September 1, 2005.