ROSEMARY LEDET, Judge.
|,This is a Civil Service Commission of the City of New Orleans (“CSC”) case. The appointing authority, the New Orleans Police Department (“NOPD”), appeals the CSC’s decision overturning the NOPD’s disciplinary action of Sergeant Irma Regis, an NOPD employee with permanent status. For the reasons that follow, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On December 10, 2008, Sergeant Regis was involved in a motor vehicle-pedestrian accident while responding to a Code 2 call-accident with injury. Officer Kenneth Márchese was dispatched to the scene, conducted an investigation, and issued an accident report. No citations were issued. Responsibility for completing the supervisory reports was assumed by Sergeant Regis’ supervisor, Sergeant Patrick Baxter. On December 12, 2008, Sergeant Baxter issued a supervisory report in which he concluded that “[although the accident appeared to be unavoidable; the officer was advised to employ more defensive driving tactics, while responding in a code 2 mode in the rain.”
|gOn April 2, 2009, an administrative subpoena was issued to Sergeant Regis directing her to appear on April 28, 2009, before the Accident Review Board (“ARB”). On April 29, 2009, the ARB issued its report in which it found that Sergeant Regis caused an avoidable accident by failing to maintain reasonable vigilance while operating a department vehicle. The ARB classified the accident as a “B2, Chart 1, Preventable/Line of Duty/Chargeable,” but noted the severity of the incident to be minor. Based on this classification, the ARB recommended that Sergeant Regis receive a letter of reprimand and attend driver’s training. Accepting the ARB’s recommendation, NOPD’s Superintendent Warren Riley, issued a letter of reprimand, dated June 2, 2009, that included an order to attend a driver’s training course. The letter of reprimand also included the following summary of the factual basis for the disciplinary action:
The inquiry determined that on December 10, 2008 at approximately 5:00 p.m., while on duty and driving New Orleans Police Department vehicle ... you were involved in a traffic accident at the intersection of Carondelet Street and Gravier Street_ You were operator of the vehicle number one responding to an accident with injury in the 300 block of St. Charles Avenue. You were traveling east on Carondelet Street with emergency vehicle’s light’s activated. As you approached the intersection of Carondelet and Gravier, while in the right lane you noticed the traffic light facing you indicated green and you *792 slowed down before making a turn. You observed a pedestrian crossing the street from your left side and applied brakes to stop. The pedestrian observed vehicle one and raised his right arm up, before impact, which struck the front hood of vehicle one. The pedestrian, Mr. Steven Rapier[,] refused medical treatment, did not want to report the incident and left the location. Prior to Mr. Rapier leaving the location he provided Sergeant Patrick Baxter with an account of the incident. Mr. Rapier stated that he did not see vehicle one until the last minute and raised his arm up before impact. Mr. Rapier stated he would have kept walking away if Sergeant Regis would not have called him back to the scene. After reviewing the facts and circumstances of the accident, the Board concluded that this accident was avoidable in that you were in 1 e-violation of 17271 MCS Chapter 154, Section 400 related to Reasonable Vigilance.
The municipal code section cited, 17271 MCS Chapter 154, Section 400, provides: “[t]he operator of any vehicle in this city shall maintain a reasonable vigilance at all times while driving, sufficient to avoid collision with another vehicle, pedestrian, or other private or public property.”[1]
Sergeant Regis filed an appeal with the CSC.[2] The CSC assigned the matter to a hearing examiner. A two-day hearing was held on August 30, 2010, and September 27, 2010. On March 31, 2011, the hearing examiner found that the facts did not support any disciplinary action and provided the following reasons for its finding:
The disciplinary letter accurately describes an unavoidable incident that perhaps technically is an accident. The Appointing Authority [ (NOPD) ] provided no documentary evidence or testimony supporting a conclusion that the incident was avoidable. Appellant [ (Sergeant Regis) ] made a right turn with a green light at an | appropriate speed, and a pedestrian stepped out in front of her without looking. She applied her brakes, and the vehicle stopped short of the pedestrian. The pedestrian flung out his arm and struck the vehicle. He was not injured.
*793 The hearing examiner thus recommended that Sergeant Regis’ appeal be granted.
Based on its review of the transcript of the hearing and the documentary evidence submitted, the CSC, on April 13, 2012, agreed with, and adopted as its own, the hearing examiner’s reasons quoted above. The CSC thus granted Sergeant Regis’ appeal and ordered the NOPD to remove the letter of reprimand from Sergeant Re-gis’ disciplinary record. This appeal by the NOPD followed.

DISCUSSION

The standards that govern this case are well-settled. Enumerating those standards, this court in Harris v. Department of Fire, 08-0514, pp. 10-11 (La.App. 4 Cir. 7/16/08), 990 So.2d 54, 61-62, stated:
• An employer cannot subject a permanent classified civil service employee to disciplinary action except for cause expressed in writing. La. Const. Art. X, § 8(A); Walters v. Dep’t of Police, 454 So.2d 106, 112 (La.1984).
• Cause for discipline of an employee exists whenever the employee’s conduct impairs the efficiency of the public service in which the employee is engaged. Cittadino v. Dep’t of Police, 558 So.2d 1311, 1315 (La.App. 4th Cir.1990).
• “The appointing authority is charged with the operation of his or her department and it is within his or her discretion to discipline an employee for sufficient cause.” Whitaker v. New Orleans Police Dep’t, 03-0512, p. 5 (La.App. 4 Cir. 9/17/03), 863 So.2d 572, 575.
• The employee may appeal from such a disciplinary action to the Commission. On appeal, the Commission has a duty to decide independently from the facts presented whether the appointing authority had good and lawful cause for taking the disciplinary action and, if so, whether the punishment imposed was commensurate with the infraction. Walters, 454 So.2d at 113.
• “The authority to reduce a penalty can only be exercised if there is insufficient cause.” Whitaker, 03-0512 at p. 4, 863 So.2d at 575 (citing Branighan v. Dep’t of Police, 362 So.2d 1221, 1223 (La.App. 4 Cir.1978)). Further, a legal basis for any change in a disciplinary action can only be that sufficient cause for the action was not shown by the appointing authority. Branighan, 362 So.2d at 1221. The Commission may not merely substitute its judgment for the appointing authority’s judgment. Whitaker, 03-0512 at p. 5, 863 So.2d at 576.
• On appeal, the standard of review is established by the constitutional rule that the Commission’s decision is subject to review on any question of law or fact. La. Const, art. X, § 12. A multifaceted standard of appellate review applies. First, as in other civil matters, deference must be given to the Commission’s factual findings, which should not be disturbed unless manifestly erroneous or clearly wrong. Second, in evaluating the Commission’s determination as to whether the disciplinary action is both based on legal cause and commensurate with the infraction, the appellate court should not modify the Commission’s decision unless it is arbitrary, capricious, or characterized by an abuse of discretion. Bannister [v. Department of Streets ], 95-404 at p. 8, 666 So.2d [641] at 647 [ (La.1996) ]. Arbitrary or capricious means there is no rational basis for the action taken by the Commission. Id.
Id.; Williams v. Department of Police, 08-0465, pp. 6-7 (La.App. 4 Cir. 10/22/08), 996 So.2d 1142, 1145-46 (citing Harris, supra); Bankston v. Department of Fire, 09-1016, p. 7 (La.App. 4 Cir. 11/18/09), 26 *794 So.3d 815, 821-22 (citing Williams, supra (citing Harris, supra)).
In applying these standards, an appellate court must make two determinations: (1) whether the appointing authority had good or lawful cause for taking the disciplinary action, and (2) whether the punishment the appointing authority imposed is commensurate with the offense. Harris, 08-0514 at p. 11, 990 So.2d at 62 (citing Staehle v. Department of Police, 98-0216, p. 3 (La.App. 4 Cir. 11/18/98), 723 So.2d 1031, 1033). To establish that it had cause, the appointing authority must prove two factors: (i) that the complained of conduct occurred, and (ii) that the complained of conduct impaired the efficiency of the Department. Harris, 08-0514 at p. 11, 990 So.2d at 62.
|fiIn the instant case, the complained of conduct was Sergeant Regis’ alleged failure to exercise reasonable vigilance, in violation of 17271 MCS Chapter 154, Section 400, that resulted in a motor vehicle-pedestrian accident. Classifying the accident as avoidable, the NOPD found a basis for imposing discipline. Granting Sergeant Regis’ appeal, the CSC found the accident was not avoidable; hence, it found there was no basis for imposing discipline. From that decision, the NOPD filed the instant appeal. On appeal, the NOPD framed the sole issue presented as whether the CSC exceeded its authority by substituting its judgment for the judgment of the appointing authority, the NOPD, when it removed the letter of reprimand from Sergeant Regis’ disciplinary record and granted her appeal.
Before the CSC, the NOPD had the burden of proving, by a preponderance of the evidence, the facts upon which it based its disciplinary action against Sergeant Re-gis. At the hearing before the CSC hearing examiner, the NOPD called three witnesses — the investigating officer, Officer Márchese; the supervising officer, Officer Baxter; and an ARB member, Sergeant Damon Murray. The NOPD also questioned Sergeant Regis, who testified on her own behalf. In addition, the NOPD introduced documentary evidence — the following four exhibits: (1) Officer March-ese’s accident report; (2) Officer Baxter’s supervisor’s report; (3) the ARB Recommendation 105, which was identified at the hearing by Sergeant Murray and signed by him; and (4) a copy of the municipal code section cited, 17271 MCS Chapter 154, Section 400.
The testimony of the NOPD’s three witnesses, Sergeant Regis’ testimony, and the documentary evidence support the CSC’s finding that the NOPD failed to prove that the accident was avoidable. The evidence is summarized below.

Officer Márchese and the accident report

17Officer Márchese was dispatched to investigate the motor vehicular-pedestrian accident in question. His investigation included interviewing three people: Sergeant Regis; Sergeant Regis’ supervisor, Sergeant Baxter; and the pedestrian, Steven Rapier.
While en route to the accident scene, Officer Márchese was notified by the Command Desk that the NOPD unit involved in the accident had relocated to the Eighth District Station on Royal Street (the “Eighth District”) and that the pedestrian had refused a report and left the scene. At the Eighth District, Officer Márchese interviewed Sergeant Regis who informed him that at the time of the incident she was responding to an accident with injury in the 300 block of St. Charles Avenue. She had no passengers and was driving a fully marked NOPD vehicle — a Ford Expedition with a LED light bar on top of it.
*795 Sergeant Regis was traveling east on Carondelet Street with her overhead emergency lights activated. As she approached the intersection of Carondelet and Gravier, she entered the right lane, noticed that traffic signal had just turned green, and proceeded to slow down before making the right turn. She observed a pedestrian crossing the street and hit her brakes to stop. She was traveling about five miles per hour, and the police vehicle slid due to the tires being on the metal street car track coupled with the rain. The pedestrian observed the police vehicle and threw his right arm up before impact; the pedestrian’s arm struck the fi-ont hood of the police vehicle. After waiting for about an hour, the pedestrian stated that he did not want a report, refused medical treatment, and left the scene. After the pedestrian left the scene, Sergeant Regis relocated to the Eighth District where she was interviewed by Officer Márchese.
IsOffícer Márchese observed that the front of the police vehicle that Sergeant Regis was driving had no damage. Although the vehicle was equipped with a camera, he observed that the camera was not functioning because it was not hooked up completely. Officer Márchese described the road conditions at the time of the accident as follows: it was “raining real heavy ... on the interstate you couldn’t even see the hood of the car it was coming down so hard. Poydras Street was holding water.... [I]t was really a bad rainstorm.”
As noted, Officer Márchese investigation also included interviewing Sergeant Baxter. Sergeant Baxter indicated that when he arrived at the accident scene the pedestrian, Mr. Rapier, was leaving the scene. Officer Baxter confirmed that if Sergeant Regis had not called the pedestrian back, the pedestrian would have continued to walk away. Officer Baxter also confirmed that the pedestrian neither wanted a report nor medical attention.
Mr. Rapier informed Officer Márchese that he was “crossing with the crosswalk right-of-way light on and the oncoming traffic on Carondelet Street had a red light.” He further informed Officer Márchese that he “did not see the NOPD S.U.V. until the moment before impact and braced with [his] ... right forearm at impact.” Mr. Rapier confirmed that Sergeant Regis’ vehicle had the overhead emergency lights on and that he could not figure out why he did not see the vehicle. Mr. Rapier further confirmed that he refused all medical attention, that he did not want a police report, and that if Sergeant Regis had not called him back, he would have continue to walk away.
As noted, Sergeant Marchese’s investigation did not result in the issuance of any citation. Sergeant Márchese prepared the accident report. Responsibility for preparing the supervisor’s report was assumed by Sergeant Baxter.
| ^Sergeant Baxter and the supervisor’s report
Sergeant Baxter testified that at the time the accident occurred he and Sergeant Regis were both responding in separate vehicles to a Code 2 call, which required two units. Sergeant Regis’ vehicle was slightly ahead of his vehicle. It was raining heavy, dark, windy, and the road conditions were very wet. Sergeant Regis proceeded to enter the intersection at Gra-vier, and her lights were activated. As she approached the intersection, there was a group of people at the intersection. Sergeant Regis proceeded to go ahead, and one of the people walked in front of her unit. Sergeant Baxter explained that “[t]here was a short gap. The guy anticipating that he was going to be hit threw up his arm and Sergeant Regis applied the brakes.” Due to the wet road conditions, *796 her police vehicle slid a “very short amount” and they “collided.” Sergeant Baxter clarified that “collided” was not a correct term for what occurred because the pedestrian “threw up his arm because he anticipated the hit.” Sergeant Baxter stated that after the incident, he left the scene in order to respond to the Code 2 call that he and Sergeant Regis were en route to when the incident occurred. Thereafter, he returned to the scene and spoke with both Sergeant Regis and the pedestrian. Sergeant Baxter noted that the pedestrian was present at the scene, was not hurt, and did not want a report.
According to Sergeant Baxter, the pedestrian told him that, at the time of the accident, he was on his way to an appointment and that he did not see the police vehicle. According to Sergeant Baxter, the pedestrian told him that “[h]e wasn’t paying attention.” Sergeant Baxter also spoke to Sergeant Regis who informed him that the pedestrian came out at the last moment and that “basically it was unavoidable.” Based on his investigation, Sergeant Baxter concluded in his report that “[t]he wind, hard rain, and wet roadway contributed to the accident. The | ^pedestrian's inattentiveness may have also been a contributing factor to the crash incident.” Sergeant Baxter thus concluded that the accident was unavoidable. Explaining his conclusions, Sergeant Baxter testified as follows:
I believed that the accident was unavoidable. In my report, when I did the report I put it was unavoidable based on a number of facts; because I thought that the road conditions were almost like flash flood, the vision was obscured, the wet conditions, and on that location. I believe there were tracks there and that, you know, it all contributed to it, and plus coupled with his inattentiveness, I think it was unavoidable.
In response to the question of whether there was something Sergeant Regis could have done, Sergeant Baxter testified: “employ more defensive tactics, more defensive driving tactics, but that’s — that’s my call.” He testified that Sergeant Baxter was not speeding.
On cross-examination, Sergeant Baxter testified that the purpose of the supervisor’s report was to determine whether the NOPD’s employee was responsible for an accident. Another purpose for the report, he noted, was to identify what factors may have contributed to an accident for study purposes so as to determine if future accidents could be avoided. Sergeant Baxter confirmed his conclusion in his supervisor’s report that the accident in question was unavoidable.

Sergeant Damon Murray and the ARB recommendation

Sergeant Damon Murray testified that he was a member of the ARB that investigated the accident in question. He also prepared and signed the ARB’s report. Sergeant Murray provided the following statement of his understanding of what happened:
Sergeant Regis was operating a police vehicle and she attempted to negotiate a turn, she had looked both ways and she didn’t see anything coming so she negotiated the turn. Somebody stepped off the curb and I guess they felt they were going to run into the police Incar, put their hand out their hand [ (sic) ], touched the car and basically that’s what happened.
According to Sergeant Murray, the ARB, as a group, found that Sergeant Regis violated 17271 MCS Chapter 154, Section 400. The ARB classified the accident as a “B2C1” — “Preventable/Line of Duty/Chargeable.” In response to the question of what Sergeant Regis should have done, Sergeant Murray stated that *797 “maybe she could have been more aware of her surroundings and maybe that could have avoided the accident.” Sergeant Murray further stated that he could not say whether he agreed or disagreed with Sergeant Baxter’s conclusion that the accident was unavoidable.

Sergeant Irma Regis

Sergeant Regis testified on her own behalf. Her version of what happened was as follows:
I was responding to a Code 2, pedestrian struck, and while in route they advised they had given a wrong location so I turned back coming down Caronde-let to the location, I think it was 300 St. Charles. As I was coming down Caron-delet, ... I was proceeding to the light which turned green. I’m going to make the turn and then the guy come walking, when I looked he was like about to walk in front of the car so I slammed on the brakes. I mean I wasn’t going but like five miles per hour when I had started proceeding to go make the turn. When I saw him I hit the brakes and he was in front my vehicle, didn’t make contract with him, he stuck his arm out, I guess anticipating being struck. But I stopped in time before I hit him so he struck his hand out and he hit the car. He didn’t fall ,to the ground or anything. So I stopped.
[The pedestrian] said that ... he wasn’t paying attention because the umbrella — it was storming, it was like a rain storm, dark, cold and it was raining and windy, real windy. So he had the big umbrella blocking his view, and he was walking across so he never saw [t]he lights when he was coming across the street, he just kept going until he looked up and he stuck his hand out. So he admitted that he wasn’t paying attention, his mind was on meeting his attorney who was supposed to be coming in his direction.
| ^Disagreeing with the ARB’s finding that the incident was a chargeable or an avoidable accident, Sergeant Regis testified that she was responding to a Code 2 when “the guy [ (the pedestrian) ] walked in front not paying attention and there was no damage to the police car, nor was there any injury to the guy.” She testified that she was going no more than five miles per hour and that she could not have been going any slower. She explained that she had come to a stop, the light had changed to green, and she looked both ways before crossing the intersection. She testified that the overhead emergency lights on her vehicle were on and that she was manually hitting the button for the siren.
Although she acknowledged the need to be especially vigilant when responding to Code 2 calls and when the weather is inclement, Sergeant Regis denied that she was not being vigilant when the incident occurred. Rather, she stated: “[i]f I wasn’t vigilant I wouldn’t have seen him coming in front of the vehicle. I mean I would have hit him then, you know, I stopped before he made a crash.” Finally, she testified that she has been with the NOPD for nineteen years, and this was her first time to go before the ARB.
Based on the above evidence, we cannot conclude that the CSC’s finding that the NOPD failed to prove that the accident was avoidable was manifestly erroneous.
The NOPD, in an attempt to establish there was cause for the discipline, cites the statement in Sergeant Marchese’s accident report that the pedestrian informed him that he was “crossing with the crosswalk right-of-way light on and | ]Sthe oncoming traffic on Carondelet Street had a red light.” Based on this reference to the pedestrian being in a crosswalk, the NOPD contends that Sergeant Regis vio *798 lated Louisiana law by failing to afford a pedestrian in a crosswalk the right-of-way. In support, the NOPD cites Cooper v. Lane, 286 So.2d 759 (La.App. 1st Cir.1973), which involved a pedestrian who was struck by a vehicle in a crosswalk on Louisiana State University’s campus. The NOPD contends that Cooper stands for the proposition that a pedestrian in a crosswalk has the right-of-way over an approaching motorist. Given that Mr. Rapier was in a crosswalk, the NOPD contends that Sergeant Regis, as an approaching motorist, violated Louisiana law by failing to afford him the right-of-way.
Sergeant Regis counters that the Cooper case is distinguishable in that it involved an uncontrolled crosswalk; whereas, the intersection in this case was controlled by “both traffic lights and Walk/Don’t Walk lights.” Sergeant Regis contends that that this case is akin to St. Amant v. Travelers Ins. Co., 233 So.2d 23 (La.App. 4th Cir.1970). In St. Amant, supra, the motorist proceeded in a cautious manner into the intersection with the benefit of a green light. The motorist stopped his vehicle instantaneously upon observing the pedestrian running into the intersection with her head down. Finding the motorist free from fault, the court noted that the motorist “did everything he could to avoid the accident, but unfortunately, under the circumstances could not.” St. Amant, 233 So.2d at 26. As in St. Amant, supra, Sergeant Regis contends that she was proceeding cautiously through the intersection with a green light and traveling at a safe rate of speed. 114Upon seeing the pedestrian, she did everything she could do to avoid the accident. Indeed, she was able to stop before striking the pedestrian. The sole contact between the vehicle and the pedestrian was with the pedestrian’s arm, which he flung out in anticipating of being hit.
In this case, the issue is not comparative fault; rather, the issue is whether the NOPD established cause for disciplining Sergeant Regis.[3] As noted, in order to establish cause, the NOPD was required to prove two factors: (i) that the complained of conduct occurred, and (ii) that the complained of conduct impaired the efficiency of the NOPD. Harris, 08-0514 at p. 11, 990 So.2d at 62. We find the NOPD failed to prove either factor.
In so finding, we note that the circumstances presented in this ease are close to those presented in Fihlman v. New Orleans Police Dep’t, 00-2360 (La.App. 4 Cir. 10/31/01), 797 So.2d 783. In Fihlman, supra, the officer was suspended by the NOPD based on a vehicular collision; the police vehicle the officer was driving collided with another police vehicle. This court affirmed the CSC’s reversal of the suspension based on the NOPD’s failure to offer any evidence establishing either that the vehicular accident was preventable or that the officer’s actions impaired the efficient operation of the NOPD. We noted that the only evidence the NOPD offered of the impairment of its operations was the con-clusory statement in its | ^disciplinary letter that the officer disregarded laws and policies governing traffic laws and safe driving practices. Fihlman, 00-2360, p. 9, 797 So.2d 783, 789.
*799 By analogy, as discussed above, the NOPD in this case failed to establish that the motor vehicle-pedestrian accident in question was avoidable. The NOPD offered no evidence to support a finding that Sergeant Regis was not paying attention to her surroundings. As Sergeant Regis testified, the fact that she was paying attention to her surroundings was evidenced by her ability to stop quickly so that only the pedestrian’s arm struck the police vehicle. Nor was any evidence presented that Sergeant Regis was driving too fast or lacked control of the police vehicle.
The NOPD also failed to offer any evidence to establish how Sergeant Regis’ actions impaired its efficient operations. As in Fihlman, supra, the only evidence the NOPD offered of the impairment of its operations was the eonclusory statement in the disciplinary letter that Sergeant Regis disregarded “traffic laws, safe driving practices, or department regulations governing motor vehicles.” Although the disciplinary letter references Sergeant Regis’ “past driving record with this department,” the NOPD in this case, as in Fihlman, supra, offered no evidence of Sergeant Regis’ past driving record.
The NOPD, in its appellant brief, argues that “[Sergeant] Regis’ actions were indeed problematic, thereby impairing the [NOPD’s] efficient operation.” Continuing, it argues that her negligent operation of the NOPD vehicle “by its very nature, impairs the efficient operation of the department.” Argument of counsel is 116not evidence. Houston v. Chargois, 98-1979 (La.App. 4 Cir. 2/24/99), 732 So.2d 71, 73.
Accordingly, we conclude that this is not a case in which the CSC substituted its finding regarding the appropriate discipline for that of the appointing authority. Fihlman, 00-2360 at pp. 8-10, 797 So.2d at 788-89. Rather, this is a case in which the NOPD failed to prove to the CSC that it had legal cause to discipline Sergeant Re-gis. Id. The CSC’s decision to reverse the discipline imposed on Sergeant Regis thus cannot be viewed as an improper substitution of its judgment for that of the NOPD. We thus find the issue raised by the NOPD on appeal is unpersuasive.[4]
DECREE
For the forgoing reasons, the judgment of the Civil Service Commission of the City of New Orleans reversing the discipline imposed by the New Orleans Police Department upon Sergeant Regis is affirmed.
AFFIRMED

. The comment to 17271 MCS Chapter-154, Section 400 cross-references the parallel state law, La. R.S. 32:58, which provides:
Any person operating a motor vehicle on the public roads of this state shall drive in a careful and prudent manner, so as not to • endanger the life, limb, or property of any person. Failure to drive in such a manner shall constitute careless operation.

. On June 11, 2009, Sergeant Regis filed a motion for summary disposition with the CSC, challenging the letter of reprimand on the grounds that the investigation resulting in the discipline exceeded the maximum sixty-day investigatory time period set forth in La. R.S. 40:2531(B)(7) of the Law Enforcement Officers' Bill of Rights. The CSC denied the motion, stating:
The Appellant misapprehends the meaning of the statute. The 60-day investigatory period commences not with the date of the alleged infraction, but with the date of commencement of the investigation, which itself is reckoned from the date upon which "a formal and written complaint” is made.
There is nothing in this record to indicate that a "formal and written complaint” was made against Officer Regis prior to the convening of the Accident Review Board, which appears to have conducted and concluded its entire investigation within 24 hours.
The statute does not command that an investigation take place within a certain amount of time subsequent to the alleged infraction, only that the investigation itself be limited in duration.
Sergeant Regis timely filed a notice of appeal or alternatively, a notice of intention to apply of supervisory writs. This court denied Sergeant Regis’ application for supervisory writ. Regis v. Department of Police, 10-0537 (La.App. 4 Cir. 05/07/10) (unpub.).

. Nonetheless, we note, contrary to the NOPD’s contention, that a motorist is not "necessarily at fault whenever there is a motor vehicle-pedestrian collision." Estate of Hickerson v. Zimmerman, 02-1195, p. 5 (La.App. 4 Cir. 7/16/03), 853 So.2d 55, 59 (citing Mutart v. Allstate Ins. Co., 622 So.2d 803, 806 (La.App. 4th Cir.1993)). Rather, both the motorist’s and the pedestrian's conduct must be considered when assessing fault in a motor vehicle-pedestrian collision case. Zimmerman, supra. Indeed, both the motorist and the pedestrian have statutory duties of care. Id.

. As Sergeant Regis points out, the NOPD failed to comply with Uniform Rules of the Courts of Appeal, Rule 3-1.1, which provides:
Every application for appeal from a final decision of any administrative body shall be filed with the appropriate administrative body in writing as required by law and shall include an assignment of errors, which shall set out separately and particularly each error asserted and a designation of the portions of the record desired to be incorporated into the transcript.
Moreover, in its brief to this court, the NOPD simply listed an "ISSUE PRESENTED” and listed no assignments of error. Citing IT Corp. v. Commission on Ethics for Public Employees, 464 So.2d 284, 292 (La.1985), Sergeant Regis contends that we should not address the NOPD arguments on appeal. Given our finding that the issue raised on appeal by the NOPD is unpersuasive, we find it unnecessary to address this issue.