WILLIE JENKINS

VERSUS

NEW ORLEANS POLICE
DEPARTMENT

\*      NO. 2022-CA-0031

\*

\*     COURT OF APPEAL

\*     FOURTH CIRCUIT

\*

     STATE OF LOUISIANA

\* \* \* \* \* \* \*

APPEAL FROM
CITY CIVIL SERVICE COMMISSION ORLEANS
NO. 9189
Hearing Officer Alexandra Mora
\* \* \* \* \* \*
**Judge Joy Cossich Lobrano**
\* \* \* \* \* \*

(Court composed of Judge Joy Cossich Lobrano, Judge Tiffany Gautier Chase,
Judge Pro Tempore Lynn M. Luker)

***CHASE, J., CONCURS IN THE RESULT***

C. Theodore Alpaugh, III
Claude A. Schlesinger
GUSTE BARNETT SCHLESINGER HENDERSON & ALPAUGH, L.L.P.
639 Loyola Avenue, Suite 2500
New Orleans, LA 70113

       COUNSEL FOR PLAINTIFF/APPELLEE

Elizabeth S. Robins
DEPUTY CITY ATTORNEY
Kevin C. Hill
SENIOR CHIEF DEPUTY CITY ATTORNEY
Donesia D. Turner
CITY ATTORNEY
1300 Perdido Street, Room 5E03
New Orleans, LA 70112

       COUNSEL FOR DEFENDANT/APPELLANT

**AFFIRMED**

**JUNE 22, 2022**

This is a civil service case. Defendant/appellant, the New Orleans Police Department ("NOPD"), appeals the November 15, 2021 decision of the Civil Service Commission ("CSC" or "Commission"), which reversed the five-day suspension imposed against plaintiff/appellee, Sergeant Willie Jenkins ("Sgt. Jenkins"). For the reasons that follow, we affirm.

**FACTS AND PROCEDURAL HISTORY**

Sgt. Jenkins is a police sergeant with permanent status with the NOPD. The discipline at issue arises from a warrantless search of a residence conducted with the consent of the resident.[1] On April 18, 2018, Sgt. Jenkins, along with several other NOPD officers, responded to a call concerning an armed robbery. Attempting to locate and arrest the suspect, Detective Decynda Chambers ("Det. Chambers") spoke to the resident and obtained her verbal consent to enter the residence, upon

---

[1] The NOPD investigated but exonerated Sgt. Jenkins of any violation of NOPD Chapter 1.2.4, Paragraph 5, which provides:

> The U.S. Constitution generally requires law enforcement to obtain a warrant prior to conducting a search. There are, however, limited exceptions to the warrant requirement, such as valid consent, incident to lawful arrest, and exigent circumstances.

which certain officers entered, encountered the suspect, and arrested him.[2] Det. Chambers, however, did not enter the residence. The officers who entered the residence included Sgt. Jenkins, Sergeant Joseph Davis ("Sgt. Davis"),[3] and Lieutenant Octavio Baldassaro ("Lt. Baldassaro"). Subsequently, the NOPD investigated and disciplined these officers for failing to complete an NOPD Consent to Search Form, documenting that the resident consented to the search and obtaining the signatures of the resident and the supervising officer approving the search.

Following a pre-discipline hearing on October 7, 2019, Superintendent Shaun D. Ferguson issued a discipline letter to Sgt. Jenkins dated July 27, 2020, stating that Sgt. Jenkins violated NOPD internal rules relative to performance of duty as to search and seizure. For this violation, Sgt. Jenkins received a five-day suspension.

On July 29, 2020, Sgt. Jenkins appealed his suspension to the CSC. A hearing examiner, appointed by the CSC, presided over a hearing on October 7, 2020 and December 7, 2020.[4] In its decision dated September 29, 2021, the CSC

---

[2] Thereafter, another officer obtained a search warrant, and a search of the residence was conducted, though the gun used in the armed robbery was not recovered.

[3] The NOPD brought a companion appeal as to the CSC's reversal of the discipline imposed on Sgt. Davis under this Court's docket no. 2022-CA-0012.

[4] We note that the hearing examiner's report and certain body camera footage viewed by the hearing examiner are not contained in the record on appeal, but we do not find either necessary for our review. As to the body camera footage, no assignment of error is raised regarding said footage. No party argues on appeal that the footage refutes any testimony or reflects facts not contained in the hearing transcripts. As to the hearing examiner's report, the CSC's decision indicates that the CSC did review said report, but as this Court has acknowledged, the CSC is "not bound to accept the hearing examiner's factual determinations and recommendation." *See Saacks v. City of New Orleans*, 95-2074, p. 20 (La. App. 4 Cir. 11/27/96), 687 So.2d 432, 444, *as amended on denial of reconsideration* (3/24/97). The CSC's decision and amended decision are

granted Jenkins' appeal and ordered the NOPD to reimburse his lost wages and other emoluments of employment and remove this discipline from his record. The CSC on its own motion issued an amended decision on November 15, 2021, which was substantially the same but corrected the number of days of the suspension reversed. This appeal followed.

## DISCUSSION

**Standard of Review and Legal Principles**

This Court has summarized the standard of review and legal principles governing civil service cases, as follows:

- An employer cannot subject a permanent classified civil service employee to disciplinary action except for cause expressed in writing. La. Const. Art. X, § 8(A); *Walters v. Dep't of Police*, 454 So.2d 106, 112 (La. 1984).

- Cause for discipline of an employee exists whenever the employee's conduct impairs the efficiency of the public service in which the employee is engaged. *Cittadino v. Dep't of Police*, 558 So.2d 1311, 1315 (La. App. 4th Cir. 1990).

- "The appointing authority is charged with the operation of his or her department and it is within his or her discretion to discipline an employee for sufficient cause." *Whitaker v. New Orleans Police Dep't*, 03-0512, p. 5 (La. App. 4 Cir. 9/17/03), 863 So.2d 572, 575.

in our record, along with the hearing transcripts and documentary exhibits. None of the parties requested supplementation of the record. Louisiana courts have long held that the burden of ensuring the appellate record's completeness falls on the appellant, here, the NOPD. *See McGee v. Mutter*, 10-1334, p. 12 (La. App. 4 Cir. 5/12/11), 67 So.3d 517, 524 (citing *Alexander v. Parish of St. John the Baptist,* 09-840, p. 9 (La. App. 5 Cir. 3/23/10), 33 So.3d 999, 1005). We recognize the Supreme Court's recent opinion in *Med. Rev. Panel for Bush*, 21-0954, p. 7 (La. 5/13/22), --- So.3d ---, ---, 2022 WL 1511275, at *4, which found the appellate court legally erred in not raising on its own motion a party's failure to formally introduce evidence, reflected in a transcript not contained in the appellate court's record. This ruling, however, gives this Court no guidance on the appellate court's responsibility to order supplementation of its record.

- The employee may appeal from such a disciplinary action to the Commission. On appeal, the Commission has a duty to decide independently from the facts presented whether the appointing authority had good and lawful cause for taking the disciplinary action and, if so, whether the punishment imposed was commensurate with the infraction. *Walters*, 454 So.2d at 113.

- "The authority to reduce a penalty can only be exercised if there is insufficient cause." *Whitaker*, 03-0512 at p. 4, 863 So.2d at 575 (citing *Branighan v. Dep't of Police*, 362 So.2d 1221, 1223 (La. App. 4 Cir. 1978)). Further, a legal basis for any change in a disciplinary action can only be that sufficient cause for the action was not shown by the appointing authority. *Branighan*, 362 So.2d at 1221. The Commission may not merely substitute its judgment for the appointing authority's judgment. *Whitaker*, 03-0512 at p. 5, 863 So.2d at 576.

- On appeal, the standard of review is established by the constitutional rule that the Commission's decision is subject to review on any question of law or fact. La. Const. art. X, § 12. A multifaceted standard of appellate review applies. First, as in other civil matters, deference must be given to the Commission's factual findings, which should not be disturbed unless manifestly erroneous or clearly wrong. Second, in evaluating the Commission's determination as to whether the disciplinary action is both based on legal cause and commensurate with the infraction, the appellate court should not modify the Commission's decision unless it is arbitrary, capricious, or characterized by an abuse of discretion. *Bannister [v. Department of Streets]*, 95-404 at p. 8, 666 So.2d [641] at 647 [ (La. 1996) ]. Arbitrary or capricious means there is no rational basis for the action taken by the Commission. *Id.*

*Abbott v. New Orleans Police Dep't*, 14-0993, pp. 7-8 (La. App. 4 Cir. 2/11/15),

165 So.3d 191, 197 (quoting *Regis v. Dep't of Police*, 12-1043, pp. 4-5 (La. App. 4

Cir. 12/12/12), 107 So.3d 790, 793)(other citations and quotations omitted).

4

"In applying these standards, an appellate court must make two determinations: (1) whether the appointing authority had good or lawful cause for taking the disciplinary action, and (2) whether the punishment the appointing authority imposed is commensurate with the offense." *Abbott*, 14-0993, p. 8, 165 So.3d at 197 (citing *Harris v. Department of Fire*, 08-0514, p. 11 (La. App. 4 Cir. 7/16/08), 990 So.2d 54, 62)(other citations omitted).

**Cause for Discipline**

The primary issue on appeal is whether the CSC erred in this first determination: finding no legal cause for Sgt. Jenkins' discipline.[5] To establish that it had legal cause for taking the disciplinary action, the appointing authority, here

---

[5] The NOPD lists five assignments of error as follows:

1. The Commission erred in in reversing NOPD's five (5) day suspension issued to Jenkins for violation of the subject's Fourth Amendment rights, and violation of NOPD's search and seizure policy, which mandates that NOPD's Consent to Search form be completed in cases involving verbal consent.
2. The Commission erred in failing to find that NOPD established cause to discipline Jenkins for his violation of the subject's Fourth Amendment rights and violation of NOPD's Search and Seizure policy, by failing to complete NOPD's required Consent to Search form as required when verbal consent is given.
3. The Commission erred in failing to find that Jenkins' violation of the subject's Fourth Amendment rights and violation of NOPD's Search and Seizure policy impacted the public's trust in the police and thereby impacted the efficient operation of the department.
4. The Commission erred in failing to find that a five (5) day suspension for Jenkins' third Level B violation was commensurate with his neglect of duty.
5. The Commission erred by substitution of its judgment for that of the NOPD Superintendent, disregarding NOPD's discipline of Jenkins for violation of its Search and Seizure policy and federal Consent Decree mandates for constitutional policing.

The NOPD does not brief any assignment individually, and its arguments combine the issues raised in assignments 1, 2, and 5. The NOPD does not brief the issues raised in assignments 3 and 4, though it mentions that, due to the CSC's finding of no legal cause, the CSC did not address whether the conduct impacted the efficient operation of the department or whether the discipline was commensurate with the conduct.

the NOPD, had the burden of proving two factors: "(i) that the complained of conduct occurred, and (ii) that the complained of conduct impaired the efficiency of the department." *Abbott*, 14-0993, p. 9, 165 So.3d at 198 (citing *Harris*, 08-0514, p. 11, 990 So.2d at 62). In its decision, the CSC held that the NOPD failed to carry its burden of proving the first factor: the occurrence of the complained of conduct.

The NOPD suspended Sgt. Jenkins for violation of NOPD's Search and Seizure Policy, as set forth in NOPD Rule 4, Paragraph 4, to wit: NOPD Chapter 1.2.4, Paragraph 20, which provides as follows:

**RULE 4: PERFORMANCE OF DUTY**

**PARAGRAPH 4: NEGLECT OF DUTY**

(c)     The following acts or omissions to act, although not exhaustive, are considered neglect of duty:

6.     Failing to comply with instructions, oral or written, from any authoritative source

**NOPD CHAPTER 1.2.4, SEARCH AND SEIZURE**

**Consent to Search**

20.     An officer shall immediately notify a supervisor when considering a search based on consent. Before an officer may conduct a consent search, the officer must have the express approval of his or her supervisor. The approving supervisor's name and approval shall be noted on the required Consent to Search Form.

In its discipline letter, the appointing authority notified Jenkins: "*You violated this Rule/Chapter when you did not receive express approval you're* [sic]

*your supervisor after considering a search based on consent.*" (Emphasis in original).

In rendering its decision to reverse Sgt. Jenkins' discipline, the CSC considered the following testimony to be pertinent.

Lieutenant Kevin Burns ("Lt. Burns") reviewed this incident as a member of the New Orleans Police Force Investigation Team, within NOPD's Public Integrity Bureau. Lt. Burns was not present at the scene of the incident. In Lt. Burns' view, no urgency existed, and the officers could have obtained a warrant. Lt. Burns testified that if exigent circumstances exist, a Consent to Search Form is not required. The Consent to Search Form requires a signature from the requesting officer, which, according to Lt. Burns, is generally whoever is lead on the case. The highest-ranking officer on the scene must sign the section of the Consent to Search Form noting his approval.

Sergeant Aiyana Francis ("Sgt. Francis") is assigned to the Public Integrity Bureau with the NOPD's Administrative Division, which investigates administrative complaints. She investigated this incident and was not present at the scene. Sgt. Francis believed that Det. Chambers, Sgt. Davis, or Sgt. Jenkins should have completed the Consent to Search Form. Sgt. Francis testified that all of the officers she interviewed, who were present at the scene, stated that they believed exigent circumstances existed.

Sgt. Jenkins testified that, by his rank as a police sergeant, he is a supervisor. He is aware that, when a resident consents to a search, before entering a residence

to search for a suspect, NOPD policy requires a police officer to notify the officer's supervisor and have the consenting party sign a Consent to Search Form. Sgt. Jenkins testified that Lt. Baldassaro supervised all the officers on the scene.

Lt. Baldassaro testified he agreed to the entry into the residence to apprehend the suspect. Lt. Baldassaro believed that obtaining a search warrant would do more harm than good in this situation. Lt. Baldassaro testified that no Consent to Search Form was obtained because, based on the presence of a bicycle identified by the victim, the officers suspected the armed robbery suspect was inside the residence, and the resident was behaving in an evasive manner, raising a concern about a potential hostage situation. Lt. Baldassaro testified it was not tactically sound to obtain a signature on the Consent to Search Form because in doing so, the officers could lose contact with the resident; if she went inside the residence and was being held hostage, she could be hurt or killed.

Sgt. Davis described the incident as a "hot scene," and, in his view, imminent escape of the suspect was possible. Similar to Lt. Baldassaro, Sgt. Davis testified that the resident's answers were evasive, and the officers feared she was being held hostage.

Det. Chambers testified that NOPD officers discovered that another woman besides the resident was inside the residence. Det. Chambers also testified that children lived at this residence.

Captain Hans Ganthier ("Capt. Ganthier") is the Commander of the Police Academy, and at the time of this incident, he was the Commander of the NOPD

First District, where Sgt. Jenkins was assigned. Capt. Ganthier testified to his opinion that exigent circumstances existed, and that it was not feasible to fill out a form with an armed robber with a gun in the residence. Capt. Ganthier testified that the safety of the officers was an issue, in addition to the safety of the resident.

Based on this testimony, the CSC noted in its findings that Det. Chambers was the lead detective, and that she would have been the officer to complete a Consent to Search Form. The CSC further noted that in this case, the highest-ranking officer on the scene was Lt. Baldassaro, who was Sgt. Jenkins' and Det. Chambers' supervisor.

The CSC stated:

> Although Sgt. Jenkins failed to complete a consent to search form, the highest-ranking officer on the scene, Lt. Baldassaro, testified such a form was not required based on the exigent circumstances. As an officer ranked below Lt. Baldassaro - who had no supervisory duties at this scene - Sgt. Jenkins should not suffer discipline for his supervisor's decision not to require the lead detective to obtain the execution of a consent to search form.

We find the CSC's reasoning provides a rational basis for reversing the discipline at issue. Contrary to the NOPD's suggestion, we do not find that the CSC ignored any testimony so as to substitute its judgment for that of the appointing authority.[6] Indeed, no factual dispute existed at the hearing that the

---

[6] This Court explained in *Regis*, 12-1043, p. 16, 107 So.3d at 799:

> … we conclude that this is not a case in which the CSC substituted its finding regarding the appropriate discipline for that of the appointing authority. *Fihlman [v. New Orleans Police Dep't]*, 00-2360, pp. 8-10 [(La. App. 4 Cir. 10/31/01)], 797 So.2d [783,] 788-89). Rather, this is a case in which the NOPD failed to prove to the CSC that it had legal cause to discipline [the officer]. *Id.* The CSC's decision to reverse the discipline imposed on [the officer]

resident gave verbal consent to search the residence, none of the officers completed the Form, the officers at the scene and their commander Capt. Ganthier all believed that exigent circumstances existed for the search, and the Public Integrity Bureau investigators instead disagreed that any exigent circumstances were present.

"Before the CSC, the NOPD had the burden of proving, by a preponderance of the evidence, the facts upon which it based its disciplinary action" against Sgt. Jenkins. *Regis*, 12-1043, p. 6, 107 So.3d at 794. The CSC then had a duty to decide independently from the facts presented whether the appointing authority had sufficient cause for the discipline. *Id*, 12-1043, p. 4, 107 So.3d at 793. Our review of the CSC's ruling demonstrates that, on review of all evidence and testimony, the CSC found that the NOPD did not meet its burden to prove that Sgt. Jenkins' conduct violated the NOPD's Search and Seizure Policy. The CSC's decision turns on its assessment that Sgt. Jenkins was not acting in a supervisory capacity at the time of the consent search, and that Lt. Baldassaro was the supervisor on the scene. Lt. Baldassaro, however, did not require the Consent to Search Form's completion based on his perception that exigent circumstances existed, which, in Lt. Baldassaro's view, alleviated the Form's requirement. On the facts presented, we cannot say that the CSC's conclusion, that Sgt. Jenkins should not be disciplined for Lt. Baldassaro's supervisory judgment, is arbitrary or capricious.

This Court observes that "under the arbitrary and capricious standard, the NOPD is entitled to deference in the interpretation of its own rules." *Gant v. New*

_____

thus cannot be viewed as an improper substitution of its judgment for that of the NOPD.

10

*Orleans Police Dep't*, 19-0640, pp. 10-11 (La. App. 4 Cir. 12/4/19), 286 So.3d 524, 532 (citing *Bowers v. Firefighters' Retirement System*, 08-1268, p. 4 (La. 3/17/09), 6 So.3d 173, 176). The NOPD argues, without further explanation, that the CSC erred in substituting its judgment as to the interpretation and application of NOPD's Search and Seizure Policy. However, the NOPD never asserts that the CSC committed any legal error, and it fails to explain with any specificity or record support how it contends that CSC misinterpreted NOPD's Search and Seizure Policy.

The NOPD also insists that the resident's Fourth Amendment rights were violated by failing to present her with the Consent to Search Form, as the Form contains language that a resident is not required to give consent and has the right to withdraw consent. Likewise, the NOPD argues that the NOPD's Search and Seizure Policy was enacted in response to a federal Consent Decree, which mandated changes to the NOPD procedures to ensure constitutional policing of the citizens of New Orleans. Nowhere does the record show that Sgt. Jenkins was disciplined for violations of the Fourth Amendment or federal Consent Decree. Neither of these issues was raised before the CSC, and we will not consider them for the first time on appeal. *See Razor v. New Orleans Dep't of Police*, 04-2002, pp. 5-6 (La. App. 4 Cir. 2/15/06), 926 So.2d 1, 5 (citations omitted).

In sum, considering the record before this Court in light of the well-settled principles discussed herein, we decline to disturb the CSC's conclusion that the NOPD did not meet its burden to prove it had legal cause for the discipline

imposed against Sgt. Jenkins. On the facts before us, we cannot say that the CSC lacked a rational basis for reversing the suspension in question. The NOPD's arguments lack merit.[7]

## CONCLUSION

Accordingly, for the reasons set forth in this opinion, we affirm the decision of the CSC to grant Sgt. Jenkins' appeal.

**AFFIRMED**

---

[7] As we acknowledge in n. 5, *infra*, due to its conclusion that the NOPD did not meet its burden to prove cause for discipline, the CSC did not address the issues the NOPD lists in its assignments 3 and 4. As we affirm the CSC's decision, it is likewise unnecessary for our analysis to reach those remaining assignments.