JOSEPH DAVIS            *       NO. 2022-CA-0012

VERSUS                 *

                               COURT OF APPEAL

NEW ORLEANS POLICE     *

DEPARTMENT             FOURTH CIRCUIT

                        *

                               STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
CITY CIVIL SERVICE COMMISSION ORLEANS
NO. 9178
Honorable Jay Alan Ginsberg, Hearing Officer
* * * * * *
**LYNN M. LUKER**
**JUDGE PRO TEMPORE**
* * * * * *

(Court composed of Judge Joy Cossich Lobrano, Judge Tiffany Gautier Chase,
Judge Pro Tempore Lynn M. Luker)

*CHASE, J., CONCURS IN THE RESULT*

ELIZABETH S. ROBINS
DEPUTY CITY ATTORNEY
KEVIN C. HILL
SENIOR DEPUTY CITY APPORNEY
DONESIA D. TURNER
CITY ATTORNEY
1300 Perdido Street, Room 5E03
New Orleans, Louisiana 70112
     **Counsel for New Orleans Police Department/Appellant**

DONOVAN A. LIVACCARI
LIVACCARI LAW LLC
101 W. Robert E. Lee Blvd., Suite 402
New Orleans, Louisiana 70124-2472
     **Counsel for Defendant/Appellee**

**AFFIRMED**

**JUNE 22, 2022**

**LML**
**JCL**


This is a civil service case. Defendant/appellant, the New Orleans Police Department ("NOPD"), appeals the September 30, 2021 decision of the Civil Service Commission ("CSC" or "Commission"), which reversed the ten-day suspension imposed against plaintiff/appellee, Sergeant Joseph Davis ("Sgt. Davis"). For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

Sgt. Davis is a police sergeant with permanent status with the NOPD. The discipline at issue arises from a warrantless search of a residence conducted with the consent of the resident.[1] On April 18, 2018, Sgt. Davis, along with several other NOPD officers, responded to a call concerning an armed robbery. Attempting to locate and arrest the suspect, Detective Decynda Chambers ("Det. Chambers") spoke to the resident and obtained her verbal consent to enter the residence, upon which certain officers entered, encountered the suspect, and arrested him.[2] Det.

---

[1] The NOPD investigated but exonerated Sgt. Davis of any violation of NOPD Chapter 1.2.4, Paragraph 5, which provides:

> The U.S. Constitution generally requires law enforcement to obtain a warrant prior to conducting a search. There are, however, limited exceptions to the warrant requirement, such as valid consent, incident to lawful arrest, and exigent circumstances.

[2] Thereafter, another officer obtained a search warrant, and a search of the residence was conducted, though the gun used in the armed robbery was not recovered.

1

Chambers, however, did not enter the residence. The officers who entered the residence included Sgt. Davis, Sergeant Willie Jenkins ("Sgt. Jenkins"),[3] and Lieutenant Octavio Baldassaro ("Lt. Baldassaro"). Subsequently, the NOPD investigated and disciplined these officers for failing to complete an NOPD Consent to Search Form, documenting that the resident consented to the search and obtaining the signatures of the resident and the supervising officer approving the search.

Following a pre-discipline hearing, Superintendent Shaun D. Ferguson issued a discipline letter to Sgt. Davis dated June 9, 2020, stating that Sgt. Davis violated NOPD internal rules relative to performance of duty as to search and seizure. For this violation, Sgt. Davis received a ten-day suspension.

On June 30, 2020, Sgt. Davis appealed his suspension to the CSC. A hearing examiner, appointed by the CSC, presided over a hearing on September 10, 2020.[4]

Following the hearing, the hearing examiner[5] issued his report on January 16, 2021, recommending that the CSC deny Sgt. Davis' appeal as he determined that NOPD established a preponderance of the evidence that Sgt. Davis violated Chapter 1.2.4, Paragraph 20.

On September 30, 2021, CSC issued its decision, granting Sgt. Davis' appeal and ordering the NOPD to reimburse his lost wages and other emoluments of employment and remove this discipline from his record. This appeal followed.

---

[3] The NOPD brought a companion appeal as to the CSC's reversal of the discipline imposed on Sgt. Jenkins under this Court's docket no. 2022-CA-0031.

[4] We note that certain body camera footage was viewed by the hearing examiner and referenced in the hearing transcript are not contained in the record on appeal. However, we do not find it necessary for our review because no assignment of error is raised regarding said footage.

[5] The record reflects that Jay Ginsberg was the hearing examiner.

**DISCUSSION**

**Standard of Review and Legal Principles**

This Court has summarized the standard of review and legal principles

governing civil service cases, as follows:

- An employer cannot subject a permanent classified civil service employee to disciplinary action except for cause expressed in writing. La. Const. Art. X, § 8(A); *Walters v. Dep't of Police*, 454 So.2d 106, 112 (La. 1984).

- Cause for discipline of an employee exists whenever the employee's conduct impairs the efficiency of the public service in which the employee is engaged. *Cittadino v. Dep't of Police*, 558 So.2d 1311, 1315 (La. App. 4th Cir. 1990).

- "The appointing authority is charged with the operation of his or her department and it is within his or her discretion to discipline an employee for sufficient cause." *Whitaker v. New Orleans Police Dep't*, 03-0512, p. 5 (La. App. 4 Cir. 9/17/03), 863 So.2d 572, 575.

- The employee may appeal from such a disciplinary action to the Commission. On appeal, the Commission has a duty to decide independently from the facts presented whether the appointing authority had good and lawful cause for taking the disciplinary action and, if so, whether the punishment imposed was commensurate with the infraction. *Walters*, 454 So.2d at 113.

- "The authority to reduce a penalty can only be exercised if there is insufficient cause." *Whitaker*, 03-0512 at p. 4, 863 So.2d at 575 (citing *Branighan v. Dep't of Police*, 362 So.2d 1221, 1223 (La. App. 4 Cir. 1978)). Further, a legal basis for any change in a disciplinary action can only be that sufficient cause for the action was not shown by the appointing authority. *Branighan*, 362 So.2d at 1221. The Commission may not merely substitute its judgment for the appointing authority's judgment. *Whitaker*, 03-0512 at p. 5, 863 So.2d at 576.

- On appeal, the standard of review is established by the constitutional rule that the Commission's decision is subject to review on any question of law or fact. La. Const. art. X, § 12. A multifaceted standard of appellate review applies. First, as in other civil matters, deference must be given to the Commission's factual findings, which should not be disturbed unless manifestly erroneous or clearly wrong. Second, in evaluating the Commission's determination as to whether the disciplinary action is both based on legal cause and commensurate with the infraction, the appellate court should not modify the Commission's decision unless it is arbitrary, capricious, or characterized by an abuse of discretion. *Bannister [v. Department of Streets]*, 95-404 at p. 8, 666 So.2d [641] at 647 [ (La. 1996) ]. Arbitrary or capricious means there is no rational basis for the action taken by the Commission. *Id.*

*Abbott v. New Orleans Police Dep't*, 14-0993, pp. 7-8 (La. App. 4 Cir. 2/11/15), 165 So.3d 191, 197 (quoting *Regis v. Dep't of Police*, 12-1043, pp. 4-5 (La. App. 4 Cir. 12/12/12), 107 So.3d 790, 793)(other citations and quotations omitted).

"In applying these standards, an appellate court must make two determinations: (1) whether the appointing authority had good or lawful cause for taking the disciplinary action, and (2) whether the punishment the appointing authority imposed is commensurate with the offense." *Abbott*, 14-0993, p. 8, 165 So.3d at 197 (citing *Harris v. Department of Fire*, 08-0514, p. 11 (La. App. 4 Cir. 7/16/08), 990 So.2d 54, 62)(other citations omitted).

**Cause for Discipline**

The primary issue on appeal is whether the CSC erred in this first determination: finding no legal cause for Sgt. Davis' discipline.[6] To establish that it had legal cause for taking the disciplinary action, the appointing authority, here the NOPD, had the burden of proving two factors: "(i) that the complained of conduct occurred, and (ii) that the complained of conduct impaired the efficiency of the department." *Abbott*, 14-0993, p. 9, 165 So.3d at 198 (citing *Harris*, 08-0514, p. 11, 990 So.2d at 62). In its decision, the CSC held that the NOPD failed to carry its burden of proving the first factor: the occurrence of the complained of conduct.

---

[6] The NOPD lists five assignments of error as follows:

1. The Commission erred in in reversing NOPD's ten (10) day suspension issued to Davis, for violation of the subject's Fourth Amendment rights, and violation of NOPD's search and seizure policy, which mandates that NOPD's Consent to Search form be completed in cases involving verbal consent, which Davis admitted he did not complete, nor did he see any other officer complete the required written consent form before he entered the residence.
2. The Commission erred in failing to find that NOPD established cause to discipline Davis for his violation of the subject's Fourth Amendment rights and violation of NOPD's Search and Seizure policy, by failing to complete NOPD's required Consent to Search form as required when verbal consent is given.
3. The Commission erried [sic] in failing to find that Davis' violation of the subject's Fourth Amendment rights and violation of NOPD's Search and Seizure policy impacted the public's trust in the police and thereby impacted the efficient operation of the department.
4. The Commission erred in failing to find that a ten (10) day suspension for Davis' fourth Level B violation was commensurate with his offense of neglecting his duty, violating NOPD policy and violating the subject's Fourth Amendment rights.
5. The Commission erred by substitution of its judgment on the seriousness of Davis' violation, negating completely the discipline NOPD issued for Davis' violation of Consent Decree mandates for constitutional policing

The NOPD does not brief any assignment individually, and its arguments combine the issues raised in assignments 1, 2, and 5. The NOPD does not brief the issues raised in assignments 3 and 4, though it mentions that, due to the CSC's finding of no legal cause, the CSC did not address whether the conduct impacted the efficient operation of the department or whether the discipline was commensurate with the conduct.

5

The NOPD suspended Sgt. Davis for violation of NOPD's Search and Seizure Policy, as set forth in NOPD Rule 4, Paragraph 4, to wit: NOPD Chapter 1.2.4, Paragraph 20, which provides as follows:

**RULE 4: PERFORMANCE OF DUTY**

**PARAGRAPH 4: NEGLECT OF DUTY**

(c)    The following acts or omissions to act, although not exhaustive, are considered neglect of duty:

6.    Failing to comply with instructions, oral or written, from any authoritative source

**NOPD CHAPTER 1.2.4, SEARCH AND SEIZURE**

**Consent to Search**

20.    An officer shall immediately notify a supervisor when considering a search based on consent. Before an officer may conduct a consent search, the officer must have the express approval of his or her supervisor. The approving supervisor's name and approval shall be noted on the required Consent to Search Form.

In its discipline letter, the appointing authority notified Sgt. Davis: "*You violated this Rule/Chapter when you did not receive express approval from your supervisor after considering a search based on consent.*" (Emphasis in original).

In rendering its decision to reverse Sgt. Davis' discipline, the CSC considered the following testimony to be pertinent.

Lieutenant Kevin Burns ("Lt. Burns") reviewed this incident as a member of the New Orleans Police Force Investigation Team, within NOPD's Public Integrity Bureau. Lt. Burns was not present at the scene of the incident. In Lt. Burns' view, no urgency existed, and the officers could have obtained a warrant. Lt. Burns

testified that if exigent circumstances exist, a Consent to Search Form is not required.[7]

Sergeant Aiyana Francis ("Sgt. Francis") is assigned to the Public Integrity Bureau with the NOPD's Administrative Division, which investigates administrative complaints. She investigated this incident and was not present at the scene. Sgt. Francis testified that all of the officers she interviewed during the investigation who were present at the scene, stated that they believed they obtained verbal consent. She noted that upon receiving verbal consent, however, a Consent to Search Form was required and not completed. Sgt. Francis testified that the "highest ranking person on the scene [here, Lt. Baldarasso]" was responsible for obtaining the Consent to Search Form. However, she also testified that Det. Chambers, Sgt. Davis, or Sgt. Jenkins as supervisors should have ensured that the Consent to Search Form was completed.

Captain La'Jon Roberts ("Capt. Roberts"), the assistant Fifth District Commander who recommended the discipline but was not on the scene, testified that no exigent circumstances were present that would excuse the failure to complete the consent form.

Sgt. Davis testified that, by his rank as a police sergeant, he is a supervisor. Sgt. Davis arrived at the suspect's location approximately forty minutes after the

---

[7] Although not mentioned in the decision, Lt. Burns testified that at the hearing that it was Sgt. Davis' responsibility to get the consent form signed. However, he also testified that "if [Det.] Chambers asked for and received consent" she would have been the person responsible for completing the consent form. He added that "if you are the person going inside the structure, [] you are trying to obtain that consent, regardless of that [Det.] Chambers said, she didn't go in. [Sgt.] Davis went in." Lt. Burns further testified that the body camera footage indicated that the resident said the officers could not enter the home and Sgt. Davis responded "step aside." However, Lt. Burns acknowledged that Sgt. Davis was exonerated for this violation based on the allegations that the resident gave verbal consent. *See* n. 1. The body camera footage is not contained in the record. *See* n. 4.

armed robbery had occurred. He testified that he was on his way to work when he heard about the incident on his radio and was "briefed" on the facts when he arrived on the scene. Sgt. Davis acknowledged that he was aware that NOPD policy requires a police officer to notify the officer's supervisor and have the consenting party sign a Consent to Search Form. Sgt. Davis testified that Det. Chambers was the lead detective and that Lt. Baldassaro was his direct supervisor and the highest ranking officer on the scene. Sgt. Davis testified that Det. Chambers knocked on the door and that the resident who answered gave verbal consent to enter. Sgt. Davis testified that the Det. Chambers should have completed the Consent to Search Form and submitted it to Lt. Baldarasso, the ranking officer on the scene for approval.

Lt. Baldassaro testified he agreed to the entry into the residence to apprehend the suspect. Lt. Baldarasso testified that it was neither "practical" nor "tactical" to obtain a Consent to Search Form and present it to the resident to sign. He explained there was an armed robbery suspect inside the residence, the resident's answers were evasive, and the officers were concerned of a potential hostage situation, which he believed gave rise to exigent circumstances. Lt. Baldarasso also testified that if no exigency existed it was Det. Chambers' responsibility to complete the Consent to Search Form.

Sgt. Jenkins' testimony is not mentioned in the CSC decision. However, similar to Lt. Baldarasso, Sgt. Jenkins testified that the resident's responses to Det. Chamber's questions were evasive but that the resident later gave the officers permission to enter. He stated that Det. Chambers, who asked for permission to search the residence, should have completed the Consent to Search Form. He

stated that it would not have been tactical to break dialogue with the resident to obtain the Consent to Search Form and possibly put the resident in danger.

Based on this testimony, the CSC noted in its findings that Det. Chambers was the lead detective, and that she would have been the officer to complete a Consent to Search Form. The CSC further noted that in this case, the highest-ranking officer on the scene was Lt. Baldassaro, who was Sgt. Davis' and Det. Chambers' supervisor.

The CSC stated:

> Although Sgt. Davis failed to complete a consent to search form, the highest-ranking officer on the scene, Lt. Baldassaro, testified such a form was not required based on the exigent circumstances. As an officer ranked below Lt. Baldassaro - who had no supervisory duties at this scene - Sgt. Davis should not suffer discipline for his supervisor's decision not to require the lead detective to obtain the execution of a consent to search form

We find the CSC's reasoning provides a rational basis for reversing the discipline at issue. Contrary to the NOPD's suggestion, we do not find that the CSC ignored any testimony so as to substitute its judgment for that of the appointing authority.[8] While the Public Integrity Bureau investigators found no exigent circumstances were present and it was undisputed that the Consent to Search was not completed; officers present on the scene, including Lt. Baldassaro,

---

[8] This Court explained in *Regis*, 12-1043, p. 16, 107 So.3d at 799:

> … we conclude that this is not a case in which the CSC substituted its finding regarding the appropriate discipline for that of the appointing authority. *Fihlman [v. New Orleans Police Dep't]*, 00-2360, pp. 8-10 [(La. App. 4 Cir. 10/31/01)], 797 So.2d [783,] 788-89). Rather, this is a case in which the NOPD failed to prove to the CSC that it had legal cause to discipline [the officer]. *Id.* The CSC's decision to reverse the discipline imposed on [the officer] thus cannot be viewed as an improper substitution of its judgment for that of the NOPD.

the highest ranking officer on the scene, believed that exigent circumstances existed for the search and stated that the resident gave verbal consent to search.

"Before the CSC, the NOPD had the burden of proving, by a preponderance of the evidence, the facts upon which it based its disciplinary action" against Sgt. Jenkins. *Regis*, 12-1043, p. 6, 107 So.3d at 794. The CSC then had a duty to decide independently from the facts presented whether the appointing authority had sufficient cause for the discipline. *Id*, 12-1043, p. 4, 107 So.3d at 793. Our review of the CSC's ruling demonstrates that, on review of all evidence and testimony, the CSC found that the NOPD did not meet its burden to prove that Sgt. Davis' conduct violated the NOPD's Search and Seizure Policy. The CSC's decision turns on its assessment that Sgt. Davis was not acting in a supervisory capacity at the time of the consent search, and that Lt. Baldassaro was the supervisor on the scene. Lt. Baldassaro, however, did not require the Consent to Search Form's completion based on his perception that exigent circumstances existed, which, in Lt. Baldassaro's view, alleviated the Form's requirement. On the facts presented, we cannot say that the CSC's conclusion, that Sgt. Davis should not be disciplined for Lt. Baldassaro's supervisory judgment, is arbitrary or capricious.

This Court observes that "under the arbitrary and capricious standard, the NOPD is entitled to deference in the interpretation of its own rules." *Gant v. New Orleans Police Dep't*, 19-0640, pp. 10-11 (La. App. 4 Cir. 12/4/19), 286 So.3d 524, 532 (citing *Bowers v. Firefighters' Retirement System*, 08-1268, p. 4 (La. 3/17/09), 6 So.3d 173, 176). The NOPD argues, without further explanation, that

the CSC erred in substituting its judgment as to the interpretation and application of NOPD's Search and Seizure Policy. However, the NOPD never asserts that the CSC committed any legal error, and it fails to explain with any specificity or record support how it contends that CSC misinterpreted NOPD's Search and Seizure Policy.

The NOPD also insists that the resident's Fourth Amendment rights were violated by failing to present her with the Consent to Search Form, as the Form contains language that a resident is not required to give consent and has the right to withdraw consent. Likewise, the NOPD argues that the NOPD's Search and Seizure Policy was enacted in response to a federal Consent Decree, which mandated changes to the NOPD procedures to ensure constitutional policing of the citizens of New Orleans. Nowhere does the record show that Sgt. Davis was disciplined for violations of the Fourth Amendment or federal Consent Decree. Neither of these issues was raised before the CSC, and we will not consider them for the first time on appeal. *See Razor v. New Orleans Dep't of Police*, 04-2002, pp. 5-6 (La. App. 4 Cir. 2/15/06), 926 So.2d 1, 5 (citations omitted).

In sum, considering the record before this Court in light of the well-settled principles discussed herein, we decline to disturb the CSC's conclusion that the NOPD did not meet its burden to prove it had legal cause for the discipline imposed against Sgt. Davis. On the facts before us, we cannot say that the CSC

lacked a rational basis for reversing the suspension in question. The NOPD's

arguments lack merit.[9]

## CONCLUSION

Accordingly, for the reasons set forth in this opinion, we affirm the decision

of the CSC to grant Sgt. Davis' appeal.


**AFFIRMED**

---

[9] As we acknowledge in n. 6, *infra*, due to its conclusion that the NOPD did not meet its burden to prove cause for discipline, the CSC did not address the issues the NOPD lists in its assignments 3 and 4. As we affirm the CSC's decision, it is likewise unnecessary for our analysis to reach those remaining assignments.